## MASK v SHELL OIL COMPANY

1. MINES AND MINERALS—OIL AND GAS INTERESTS—ABANDONMENT—
   STATUTES.

   Under the subject statute oil and gas interests owned by a
   nonsurface owner may be abandoned if no specified activity
   occurs within a 20-year period (MCLA 554.291 *et seq.;* MSA
   26.1163[1] *et seq.).*

2. MINES AND MINERALS—OIL AND GAS INTERESTS—DORMANT INTER-
   ESTS—SURFACE OWNERS—TERMINATION OF INTERESTS—CLAIM OF
   INTEREST.

   Under the subject statute dormant oil and gas interests in land
   owned by persons other than the owners of the surface may
   terminate, and title to such interests vest in the surface owners
   in the absence of the filing of a notice of a claim of interest
   within a specified period of time (MCLA 554.291 *et seq.;* MSA
   26.1163[1] *et seq.).*

3. WORDS AND PHRASES—DORMANT.

   The following terms are used to define "dormant": literally,
   sleeping; hence inactive; in abeyance; unknown; concealed;
   silent.

4. MINES AND MINERALS—OIL AND GAS INTERESTS—ISSUANCE OF
   DRILLING PERMIT—DORMANT MINERALS ACT—STATUTES.

   The issuance of a valid drilling permit by the DNR to a party
   holding a lease to the mineral rights under the land covered by
   the lease constituted conclusive evidence under the dormant
   mineral acts that the oil and gas interest was not dormant
   (MCLA 554.291 *et seq.;* MSA 26.1163[1] *et seq.).*

REFERENCES FOR POINTS IN HEADNOTES
[1, 7] 38 Am Jur 2d, Gas and Oil §§ 208, 209.
   54 Am Jur 2d, Mines and Minerals § 61.
[2, 3] 38 Am Jur 2d, Gas and Oil § 206 *et seq.*
[4] 38 Am Jur 2d, Gas and Oil § 322.
[5] 23 Am Jur 2d, Deeds §§ 16, 291, 292.
[6] 38 Am Jur 2d, Gas and Oil § 211.

5. DEEDS—QUIT CLAIM—TRANSFER OF REAL PROPERTY.

A quit-claim instrument is recognized as a valid means of transfer of real property interests.

6. MINES AND MINERALS—OIL AND GAS INTERESTS—QUIT-CLAIM INSTRUMENTS—DORMANT MINERALS ACT—STATUTES.

A quit-claim instrument which transfers a lessee's right to extract gas and oil from beneath a specific piece of property back to the owner of the oil and gas and mineral interest qualifies as a transfer for purposes of the dormant mineral act and is sufficient to stop the running of the 20-year period for dormancy of a nonsurface owner's mineral interest as provided by the act (MCLA 554.291 *et seq.;* MSA 26.1163[1] *et seq.).*

7. MINES AND MINERALS—OIL AND GAS—NONSURFACE OWNERS—DORMANT MINERALS ACT—EXECUTION OF NEW LEASE—STATUTES.

The mineral rights of a nonsurface owner were not defeated by the running of the 20-year dormancy period as provided by the dormant minerals act where within the 20-year time period there was an execution of a new oil and gas lease by the owner of the mineral rights (MCLA 554.291 *et seq.;* MSA 26.1163[1] *et seq.).*

Appeal from Otsego, Charles M. Forster, J. Submitted June 8, 1977, at Grand Rapids. (Docket No. 29035.) Decided July 18, 1977. Leave to appeal denied, 402 Mich —.

Complaint by Thomas B. Mask and others against Shell Oil Company, John A. Barnes and Eula Barnes to quiet title to certain oil and gas interests, and for injunctive and monetary relief. Summary judgment for plaintiffs. Defendants appeal. Affirmed.

*Lynch, Gallagher & Lynch,* for plaintiff.

*Mika, Meyers, Beckett & Jones* (by *Veryl N. Meyers* and *J. Warren Eardley),* for defendant.

Before: R. B. BURNS, P. J., and D. E. HOLBROOK and M. B. BREIGHNER,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

D. E. HOLBROOK, J. The instant action involves a dispute concerning ownership of oil and gas interests in the Southwest 1/4 of Section 15, Township 30 North, Range 1 West, Otsego County. Plaintiffs brought this action seeking to quiet title to these interests and additionally seeking injunctive and monetary relief. The trial court granted plaintiffs' motion for summary judgment and defendants appeal as of right.

In this apparent case of first impression, we are asked to construe an act commonly referred to as the dormant minerals act.[1] 1963 PA 42; MCLA 554.291, *et seq.;* MSA 26.1163(1), *et seq.* See Street, *Need for Legislation to Eliminate Dormant Royalty Interests,* Vol 42, No 3, Michigan Bar Journal 49 (March 1963). This statute provides that oil and gas interests owned by a nonsurface owner may be abandoned if no specified activity occurs within a 20-year period. We are concerned with whether there has been an abandonment here.

MCLA 554.291; MSA 26.1163(1) provides:

"Any interest in oil or gas in any land owned by any person other than the owner of the surface, which has not been sold, leased, mortgaged or *transferred by instrument* recorded in the register of deeds office for the county where such interest is located for a period of 20 years shall, in the absence of the issuance of a drilling permit as to such interest or the actual production or withdrawal of oil or gas from said lands, or from lands covered by a lease to which such interest is subject, or from lands pooled, unitized or included in unit operations therewith, or the use of such interest in underground gas storage operations, during such period of 20 years, be deemed abandoned, unless the owner thereof shall, within 3 years after the effective date of

---

[1] The parties in their briefs refer to the statute as the dormant minerals act. Although this title was not properly adopted by the Legislature, it is apparent that those in the business refer to the act by this title, and, therefore, it is used in this opinion.

this act or within 20 years after the last sale, lease, mortgage or *transfer of record* of such interest or *within 20 years after the last issuance of a drilling permit* as to such interest or actual production or withdrawal of oil or gas, from said lands, or from lands covered by a lease to which such interest is subject, or from lands pooled, unitized, or included in unit operations therewith, or the use of such interest in underground gas storage operations, whichever is later, record a claim of interest as hereinafter provided. Any interest in oil or gas deemed abandoned as herein provided shall vest as of the date of such abandonment in the owner or owners of the surface in keeping with the character of the surface ownership." (Emphasis supplied.)

Additionally, the title of the act provides:

"AN ACT to provide for the termination of *dormant* oil and gas interests in land owned by persons other than the owners of the surface and for the vesting of title to same in the surface owners in the absence of the filing of a notice of claim of interest within a specified period of time." (Emphasis supplied.)

It is helpful to keep in mind the definition of *dormant.* "Literally, sleeping; hence inactive; in abeyance; unknown; concealed; silent." Black's Law Dictionary (4th ed), p 576. In order for us to determine if there has been an abandonment, we must carefully review the facts.

On July 2, 1938, O. S. Hawes, O. W. Hanson, and Wilhelm Raae, as trustees for Johannesburg Manufacturing Company, conveyed the premises to defendants John A. Barnes and Eula E. Barnes by deed recorded on June 1, 1940, by which the grantor trustees reserved the mineral rights in the instant property. On May 31, 1944, the Johannesburg Manufacturing Company trustees leased its interests to the Sun Oil Company for development

of oil and gas. The lease was duly recorded on June 28, 1944. The lease was given for a *primary term of 10 years* and as long thereafter as oil and gas or either of them was produced and provided for delay rental payments of $1,360 each three months. Rental payments were paid by Sun Oil quarterly until February 5, 1954, three months prior to expiration of the primary term of the lease. On that date Sun Oil executed a release and surrender of the subject lease which was properly recorded on March 8, 1954. Prior to said release a drilling permit had been issued on June 29, 1953, to Sun Oil Company which covered a portion of the land subject to the 1944 lease, although not on the exact description involved in this appeal. Pursuant to the permit a well was drilled thereon which resulted in a dry hole. On November 11, 1971, plaintiff trustees of Johannesburg Manufacturing Company executed and delivered to plaintiff North Michigan Land and Oil Corporation an oil and gas lease which was duly recorded on November 24, 1971. Plaintiff Thomas B. Mask received an assignment of this lease from lessee which was duly recorded on December 17, 1971. Defendants maintain that the 20-year period expired, having run from the original granting of the Sun Oil Company lease in 1944 until 1964. Plaintiffs contend that the statute has not run on said land for two reasons. First, because of the issuance of the permit to drill for oil and gas on the leasehold premises in June of 1953, the first possible date for commencement of the running of the statutory period was established. Secondly, the release and surrender of the lease in 1954, which was a transfer of those interests, established a subsequent date for the commencement of the running of the 20-year statutory period.

We now consider plaintiffs' first contention. While the 1944 lease was in full force and effect, the Department of Natural Resources issued a valid drilling permit. The permit to drill and the subsequent drilling of a well evidenced an active and ongoing relationship by which the world was further put on notice that this property was being actively developed. The statute expressly provides that this drilling permit constitutes conclusive evidence that the oil and gas interest was not dormant. MCLA 554.291; MSA 26.1163(1).

Secondly, the purpose of the dormant minerals act can only be properly served by recognizing that the recorded surrender of valid oil and gas lease rights in 1954 by Sun Oil also established a proper date for the commencement of the running of the abandonment period. It is noted that the language used in the surrender provided:

"[I]n consideration of the sum of One Dollar in hand paid, the receipt whereof is hereby acknowledged, does cancel, surrender, remise, release and *quit-claim* unto the said lessor and/or lessors above named, respectively, and/or the present owners of said lands above described, their successors and assigns forever, all of the right, title and interest of said Sun Oil Company in, to and under said lease."[2] (Emphasis supplied.)

---

[2] The release reads in its entirety as follows:

"WHEREAS, Johannesburg Manufacturing Co. Trustees, did on the 31st day of May, 1944, execute and deliver to Sun Oil Company a certain written lease for oil and gas purposes bearing that date, and duly recorded in the Register's Office of Otsego County, State of Michigan, on the 28th day of June, 1944, in Misc. Book G Page 627 of and upon all the land in Charlton & Chester Townships Otsego County and State of Michigan described as follows, viz.: South 1/2 of Section 3, North 1/2, Southeast 1/4, Section 8, Northwest 1/4 of Northwest 1/4, South 1/2 of Northwest 1/4, Southwest 1/4, North 1/2 of Northeast 1/4 Section 9, North 1/2, Southwest 1/4, Northwest 1/4 of Southeast 1/4 of Section 10, North 1/2 of Northwest 1/4, Northwest 1/4 of Northeast 1/4, Section 11, Southwest 1/4 of Northwest 1/4, Section 12, Northwest 1/4, Southwest 1/4 of Southeast 1/4, Southeast 1/4 of Southwest 1/4, Section 13, South 1/2 of Southwest 1/4,

A quit-claim instrument is recognized as a valid means of transfer of real property interests in Michigan. *Demerse v Mitchell,* 187 Mich 683; 164 NW 97 (1915), *Hoffman v Harrington,* 28 Mich 90, 102 (1873). The instrument herein qualifies as a *transfer* for purposes of the statute. The recording of the surrender and transfer back of the lease rights to lessors put the world on notice that at least until that time an active interest in the oil and gas rights in that property was being maintained. At that time an investigation would have revealed the lease whereby the Sun Oil Company was obligated to make rental payments of $1,360 each three months for the privilege of drilling for and producing all the oil and gas in said land with 7/8 of the proceeds going to the lessee and 1/8 to

Section 14, South 1/2 of Southeast 1/4, Northwest 1/4 of Southeast 1/4, Southwest 1/4, West 1/2 of Northwest 1/4, Section 15, Northwest 1/4 of Southeast 1/4, West 1/2 of Northeast 1/4, East 1/2 of Northwest 1/4, Section 16, East 1/2 of Northwest 1/4, Northeast 1/4 of Southwest 1/4, Section 17, North 1/2, East 1/2 of Southwest 1/4, Southeast 1/4, Section 22, Northwest 1/4, South 1/2 of Northeast 1/4, Northeast 1/4 of Southwest 1/4, Section 23, Southwest 1/4 of Northwest 1/4, East 1/2 of Northwest 1/4, North 1/2 of Southwest 1/4, Southeast 1/4 of Southwest 1/4, West 1/2 of Northeast 1/4, Section 24, Southeast 1/4 of Northwest 1/4, South 1/2 of Northeast 1/4, Northeast 1/4 of Northeast 1/4, North 1/2 of Southeast 1/4, Northeast 1/4 of Southwest 1/4, Section 33, North 1/2 of North 1/2 of Section 35, Township 30 North, Range 1 West; East 1/2 of Southeast 1/4 of Section 10, East 1/2 of Northwest 1/4 of Section 11, Southwest 1/4, Section 11, West 1/2 of Northwest 1/4, East 1/2 of Northeast 1/4, Section 12, West 1/2 of Northeast 1/4, South 1/2 of Northwest 1/4, Southwest 1/4, Section 13, Southeast 1/4 of Northeast 1/4, Southeast 1/4 of Northwest 1/4, North 1/2 of Southwest 1/4, Northeast 1/4 of Southeast 1/4, Section 14, Township 30 North Range 2 West, Containing 5,440 acres, more or less.

"NOW, KNOW ALL MEN BY THESE PRESENTS, that Sun Oil Company, in consideration of the sum of One Dollar in hand paid, the receipt whereof is hereby acknowledged, does cancel, surrender, remise, release and quit-claim unto the said lessor and/or lessors above named, respectively, and/or the present owners of said lands above described, their successors and assigns forever, all of the right, title and interest of said Sun Oil Company in, to and under said lease.

"IN WITNESS WHEREOF, said Sun Oil Company has caused these presents to be signed on this 5th day of February, 1954."

the lessor. This further revealed that the lessor continued to be maintaining viable oil and gas interests in the land. Furthermore, no prior relinquishment of oil and gas interests owned by Sun Oil Company under lessor's lease had been filed. See MCLA 554.281; MSA 28.1161. Were this not so and defendants' contention accepted, termination of plaintiffs' interests by running of the 20-year period would have the effect of treating as abandoned those interests which were being actively maintained, including this lease which was actively maintained for nearly a 10-year period of time from 1944 until 1954. This cannot be so. Herein, the property interests could not commence to become dormant after the original lease to Sun Oil Company dated May 31, 1944, until at least relinquishment and transfer back to lessors of said lease rights in 1954.

Because of the execution of the new oil and gas lease by plaintiffs, mineral rights owners, in 1971, the 20-year period provided in the dormant minerals act has not run. We, therefore, rule that plaintiffs' oil and gas interests have not been abandoned under the statute.

We do not pass upon the constitutionality of this statute, having decided that plaintiffs have not abandoned their rights in the oil and gas interests in this property by operation of the statute. *Ryan v Ore Lake,* 56 Mich App 162, 167; 223 NW2d 637 (1974).

The trial court properly granted plaintiffs' motion for summary judgment.

Affirmed. Costs to plaintiffs.