## TOLES v MANEIKIS

Docket No. 91705. Submitted April 14, 1987, at Lansing. Decided August 3, 1987.

Robert Toles and others brought an action in the Jackson Circuit Court against Victor Maneikis, individually and doing business as Independent Oil Investors, and Dean Center, individually and doing business as Center Operation, seeking injunctive and declaratory relief in regard to certain leases for gas and oil wells and the fixtures, equipment, storage tanks, separators, and production casing and tubing associated therewith. The trial court, Charles J. Falahee, J., entered a judgment determining that Victor Maneikis had abandoned an oil and gas lease as of 1980 and that the lease was null and void. The judgment also determined that Maneikis' failure to remove all fixtures, equipment, storage tanks, separators, and production casing and tubing resulted in a forfeiture of the same. The judgment enjoined defendants from entering the leased property. The well holes and casing and related equipment were adjudged to be owned by the surface owners, subject to new oil and gas leases held by plaintiff Robert Toles. The judgment declared void a permit issued by the Department of Natural Resources to Maneikis for the reworking or plugging of operations. The judgment also contained other miscellaneous relief, including attorney fees. Defendants objected to the proposed judgment and the trial court took the assessment of attorney fees under advisement. The circuit judge thereafter died before deciding the allowable amount of attorney fees. An acting circuit court judge, Russell L. Baugh, reviewed the record and awarded plaintiffs $6,600 of the $11,050 attorney fees requested. Defendants moved for a new trial and the court, Frederick O. Sill, J., denied the motion and awarded plaintiffs $500 additional attorney fees. Defendants appealed.

The Court of Appeals *held:*

REFERENCES

Am Jur 2d, Gas and Oil §§ 94-99, 108.

Amount of attorneys' compensation in matters involving real estate. 58 ALR3d 201.

See also the annotations in the Index to Annotations under Gas and Oil.

1. The lease clause permitting removal of fixtures "at any time" is to be interpreted to allow only "a reasonable time" after termination of the lease for removal of the casing and related equipment.

2. The trial court properly determined that the lease terminated by its terms when production from both wells ended in 1980.

3. Five years was more than sufficient time to remove the casings and equipment. The trial court did not err in finding that defendants failed to act within a reasonable time by not removing the fixtures within five years following the end of production. The trial court's consequent determination that defendants had forfeited title to the fixtures by failing to remove them within a reasonable time was in accord with the prevailing rule vesting title in the surface owners.

4. The award of attorney fees was not error.

5. The case is remanded to the trial court for a hearing and determination of plaintiff's reasonable attorney fees on appeal.

Affirmed and remanded.

1. GAS AND OIL — LEASES — JUDICIAL CONSTRUCTION.

An oil and gas lease typically does not settle or decide each and every right and obligation of the parties and may leave open many important matters, permitting future events to shape the parties' conduct; careful attention is therefore paid to the language employed in a particular lease in construing the lease.

2. GAS AND OIL — LEASES — JUDICIAL CONSTRUCTION.

A clause in an oil and gas lease giving the lessee the right to remove his machinery and fixtures, including casing, "at any time" should be construed to give the lessee only "a reasonable time" to remove them after the expiration of his lease; the question of what constitutes "a reasonable time" is one of fact, or a mixed question of law and fact, and depends on the circumstances of any given case.

3. GAS AND OIL — LEASES — FIXTURES — FORFEITURES.

Title to fixtures owned by a lessee of an oil and gas well vests in the surface owners where the lessee forfeits title to the fixtures by failing to remove them within a reasonable time after expiration of the lease.

4. GAS AND OIL — LEASES — RELEASE OF LEASES — ATTORNEY FEES.

A statute regarding suit for the release of an oil, gas or mineral lease allows an award of attorney fees necessitated by a circuit

court action for such a release and an appeal to the Court of Appeals therefrom (MCL 554.282; MSA 26.1162).

*Joseph Malfait,* for plaintiffs.

*Ellis, Lambright & Brandes* (by *Donald L. Lambright*), for defendants.

Before: CYNAR, P.J., and SHEPHERD and B. A. JASPER,* JJ.

SHEPHERD, J. This is an oil and gas case. The judgment entered by the trial court determined that defendant Victor Maneikis had abandoned an oil and gas lease as of 1980 and that the lease was null and void. The judgment also determined that Maneikis' failure to remove all fixtures, equipment, storage tanks, separators, and production casing and tubing resulted in a forfeiture of the same. The judgment enjoined defendants from entering the leased property. The well holes and casing and related equipment were adjudged to be owned by the surface owners, subject to new oil and gas leases held by plaintiff Robert G. Toles. The judgment declared void a permit issued by the Department of Natural Resources to Maneikis "for the reworking or plugging of operations." The judgment also contained other miscellaneous relief, including attorney fees. Defendants appeal from the judgment and an order denying defendants' motion for new trial. We affirm.

Two oil and gas wells exist on the property. Charles W. and Mae F. Williams entered into the oil and gas lease at issue on October 10, 1956. Plaintiffs Dowayne J. and Donamae Brigham later purchased the land from Charles Williams, who apparently retained a life estate. Toles is the

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

owner of subsequent oil and gas leases on the property.

Charles and Mae Williams gave the original oil and gas lease to Smith Petroleum Corporation. Eventually, Kenowa Oil Company received the lease. Kenowa is owned by Maneikis, who also does business as Independent Oil Investors. Defendant Dean Center, doing business as Center Operation, has been hired by Maneikis (or Kenowa Oil or Independent Oil Investors or all three) to plug one or both of the oil and gas wells on the property. Although it appears no formal assignment of the lease to Maneikis occurred, he is nominally an oil and gas lessee of the real estate. The DNR has issued a permit in his name even though his ownership interest is unclear.

At issue are four storage tanks, two heater-treaters, production tubing, pipe, valves, and 5½ inch production casing. This equipment was used in the production and storage of oil and natural gas from the wells from 1960 through approximately June, 1980, at which time oil and gas production was discontinued. This case concerns the construction of a clause in a 1956 oil and gas lease known as the "removal of fixtures" clause. Accordingly, some discussion of the history of this lease and the lawsuit is necessary. Since no trial was held, the record is quite limited. We have taken the following facts largely from plaintiffs' brief, which defendants have not contested on appeal.

The original lease was to Smith Petroleum on October 10, 1956. Smith Petroleum assigned its interest to Frontier Petroleum Company on December 10, 1959. Frontier completed the first well, Williams #1, on January 24, 1960, and the second well, Williams #2, on June 28, 1960. Both wells produced the maximum amount of oil allowed daily by the DNR into 1969. Both wells later pro-

duced "significant" amounts of oil through September, 1971, when they were temporarily shut in. Both wells also produced a significant amount of natural gas up to that time.

Frontier assigned its lease on July 7, 1972, to Kenowa Oil. DNR records indicate that Kenowa transferred permits to Maneikis on December 19, 1978, though apparently no formal assignment of the lease ever occurred. Oil and gas production has apparently been sporadic since the assignment, ranging from no production to "significant" production. Williams #1 has produced only twenty-eight barrels of oil since January, 1977. The pump jack was removed after August, 1977, after being severely damaged, and was never replaced. Williams #1 produced very little gas from January, 1979, through March, 1980, and was completely shut down by pulling production tubing out of the well and capping it. Williams #2 had significant oil production for over a year as well as significant gas production through August, 1980. Williams #2 has been shut in from December, 1980, to the present time, however. According to plaintiffs, Kenowa Oil and defendants have offered no reason why the wells were shut in. Nor have Kenowa and Maneikis made any apparent effort to obtain further production.

Charles Williams subsequently executed a "top lease" on the property to Toles. A top lease is one granted by a landowner during the existence of a recorded mineral lease which will become effective if and when the existing lease expires or is terminated. 8 Williams & Meyers, Oil & Gas Law, p 912. Williams told Toles he had received no shut-in or normal royalties since before 1980, and had not been paid for some production before the wells were shut down. He also advised Toles that the

storage tanks were disconnected from the trans-
mission pipeline before the wells were shut in.

Williams sold his property to the Brighams in
1984, retaining a life estate. Maneikis obtained a
DNR permit to rework one of the wells in January
or February, 1985. Plaintiffs filed the instant ac-
tion on February 25, 1985, seeking injunctive and
declaratory relief. The circuit court granted a
temporary restraining order against defendants.
Following a pretrial conference on August 23,
1985, the court entered a preliminary injunction
effective until trial. The pretrial order indicated
that the issue to be tried was whether production
had ceased and whether that terminated the lease.
The court ordered defendants to provide plaintiffs
with all records concerning work done on the wells
and production. Defendants apparently failed to
produce the records and plaintiffs filed a default.

A hearing apparently took place on October 10,
1985, the date set for trial, though no transcript
has been provided to this Court. The court entered
an order on November 8, 1985, apparently based
on a stipulation reached at the hearing, holding
the 1956 lease void and forfeited because no pro-
duction had occurred for five years. The prelimi-
nary injunction was entered and the parties were
ordered to brief the issues concerning ownership of
the wells, casing, and equipment, and Maneikis'
right to remove the casing and equipment and
plug the wells.

The court subsequently entered an opinion find-
ing that, while defendants owned the casings and
related equipment at the time production ceased,
they only had a reasonable time to remove them
after production ceased, which the court concluded
was six months. Defendants' failure to act resulted
in abandonment and termination of the lease by
operation of law. In addition to granting the relief

requested by plaintiffs, the court allowed plaintiffs costs, including reasonable attorney fees permitted by MCL 554.282; MSA 26.1162.

Defendants objected to the proposed judgment. The court took the assessment of attorney fees under advisement. However, the circuit judge died unexpectedly before deciding the allowable amount of attorney fees. An acting circuit court judge, after reviewing the record, awarded plaintiffs $6,600, representing sixty-six hours of work at $100 per hour. This constituted a reduction from the $11,050 requested by plaintiffs. The court disallowed fees for plaintiffs' attorney's travel time and reduced other charges as "excessive in view of the type of work that was performed." Defendants subsequently moved for a new trial, which the court denied. The court awarded plaintiffs $500 additional attorney fees.

We begin our consideration of the issues presented by this case with some preliminary observations on the nature of oil and gas leases. Our Supreme Court has recognized that the oil and gas lease form is more the result of evolution than of initial drafting, *J J Fagan & Co v Burns,* 247 Mich 674, 678; 226 NW 653 (1929):

> It is sufficient for our purpose to appreciate the fact of such evolution, and that the lease at bar is not an isolated or private agreement, drafted by uninformed neighbors to roughly express their understanding, but is a technical contract, reflecting the development and present status of the law of oil and gas, as far as it may be said to have a status in view of the bewildering conflict in reasoning and ruling. The lease should be read not only according to its words, but in connection with the purpose of its clauses.

The Supreme Court later described oil and gas

leases as "usually speculative in character, being more in the nature of options" with ambiguities and repugnance of terms strictly construed in the lessor's favor. *McClanahan Oil Co v Perkins,* 303 Mich 448, 451; 6 NW2d 742 (1942).

These remarks are consistent with the view expressed by commentators that an oil and gas lease typically does not settle or decide each and every right and obligation of the parties. The lease is generally executed before a lessee knows what development and marketing ramifications will exist. Thus, an oil and gas lease leaves open many important matters, permitting future events, rather than dim foresight, to shape the parties' conduct. 5 Williams & Meyers, Oil & Gas Law, p 11. For that reason, careful attention has been paid to the language employed in a particular lease. *J J Fagan, supra* at 678.

At issue in the instant case is construction of the "removal of fixtures" clause in the 1956 lease:

> Lessee shall have the right to use, free of cost, gas, oil and water produced on said land for lessee's operations thereon except water from the wells of lessor. When requested by lessor, lessee shall bury lessee's pipe lines below plow depth. No well shall be drilled nearer than 200 feet to the house or barn now on said premises without written consent of lessor. Lessee shall pay for all damages caused by lessee's operations to growing crops on said land. *Lessee shall have the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing.*

Considerable variety apparently exists with regard to possible "removal of fixtures" clauses. See 4 Williams, Oil & Gas Law, § 674, pp 202-208. The disputed clause in this case is of the sort most

frequently found in oil and gas leases. *Id.* at § 674.1, p 208. A typical construction of "at any time" to mean "within a reasonable time" is found in *Terry v Crosswy,* 264 SW 718, 720 (Tex Civ App, 1924):

> The clause in appellant's contract giving him the right to remove his casing, pipes and rods "at any time" should be construed as giving him only a reasonable time to remove them after the expiration of his lease. It certainly was not within the contemplation of the parties to the lease that appellant could incumber the land with his fixtures, machinery, piping, and tubes, and, after the expiration of this lease and abandonment of all of his rights thereunder, hold possession of the land by willfully failing and refusing to remove his property. The right to an indefinite possession of the land for the purpose of claiming his fixtures now asserted by appellant would not be to his advantage, because his property would necessarily deteriorate, but would result in great hardship to the owner of the fee. Under appellant's construction of the contract, he could withhold from the owners of the fee the possession of the land to the extent covered by his improvements for an indefinite time, though all his rights under the lease were forfeited. If we are correct in this construction of the lease, the failure of appellant to remove his fixtures within a reasonable time resulted in a forfeiture, making them a part of the realty and vesting the owner of the fee with title thereto.

We have located no Michigan decisions construing the phrase "at any time" in such a "removal of fixtures" clause. The rule of construction cited above, however, is followed in numerous other jurisdictions.[1] We conclude that this rule of con-

---

[1] See, e.g., *Louisiana Oil Refining Corp v Haltom,* 188 Ark 117; 64 SW2d 98 (1933); *Michaels v Pontius,* 83 Ind App 66; 137 NE 579 (1922); *Pratt v Gerstner,* 188 Kan 148; 360 P2d 1101 (1961); *Locke v*

struction should also be followed in Michigan. Accordingly, we interpret the lease clause permitting removal of fixtures "at any time" to allow only "a reasonable time" after termination of the lease for removal of the casing and related equipment.

This holding necessitates a further determination of how and when the lease terminated. The lease's term or duration is expressly described in its habendum clause:

> It is agreed that this lease shall remain in force for a term of Ten (10) years from this date, and *as long thereafter* as oil or gas or either of them is produced from said land by lessee, or from a communitized unit as hereinafter provided.

The lease further provides:

> Notwithstanding anything in this lease contained to the contrary, it is expressly agreed that if lessee shall commence drilling operations at any time while this lease is in force, this lease shall remain in force and its term shall continue so long as such operations are prosecuted and, if production results therefrom, then as long as production continues.

In such a "thereafter" habendum clause, the term "production" has been construed to mean production in paying quantities sufficient to yield a return in excess of operating costs. *West Bay Exploration Co v Amoco Production Co,* 148 Mich App 197, 206-207; 384 NW2d 407 (1986), vacated and remanded on other grounds 425 Mich 879 (1986). In this case, we need not decide whether such a construction is warranted since production

*Palmore,* 308 Ky 637; 215 SW2d 544 (1948); *Donnell v Gray,* 215 La 497; 41 So 2d 66 (1949); *Stevens v Iverson,* 179 Okla 401; 66 P2d 12 (1937); *Shellar v Shivers,* 171 Pa 569; 33 A 95 (1895).

had ceased altogether. Thus, the trial court properly concluded that the lease terminated by its terms when production from both wells ended in 1980.[2] No reason for ceasing production is apparent from the record. The partial judgment entered on November 8, 1985, by stipulation of the parties, however, clearly reveals that production had ceased for nearly five years. Contrary to defendants' assertions, the lease was not terminated by judicial decree on the date of that judgment but, rather, by defendants' ceasing production.

The question then becomes what constituted a reasonable time for defendants to remove the fixtures. It appears that this question is one of fact, or a mixed question of fact and law, and depends on the circumstances of any given case. See *Meers v Frick-Reid Supply Corp,* 127 SW2d 493, 497 (Tex Civ App, 1939). Various cases have held that periods ranging from eight months to as much as nine years were reasonable time allowances to remove fixtures under the circumstances, while other cases have found similar time periods to be unreasonable. See generally, 4 Williams, Oil & Gas Law, § 674.1, pp 210-213. The trial court relied upon *Michaels v Pontius,* 83 Ind App 66; 137 NE 579 (1922), which found a period of from five to six years after production ceased to be unreasonable.

As Michigan law is silent on this point, we believe it is proper to follow *Meers* and examine such cases on their particular facts. The trial court apparently considered six months to have been a reasonable time to remove the casings and equipment in this instance. Whether six months was a reasonable time, however, we believe that five

---

[2] The court termed defendants' actions an "abandonment." It does not appear that the court used this term in the same sense as the definitions found in 8 Williams & Meyers, Oil & Gas Law, pp 2-3. We believe the court used the term "abandonment" to characterize the cessation of production necessary to terminate the lease by its terms.

years was more than sufficient time. The trial court thus did not err in finding that defendants failed to act within a reasonable time by not removing the fixtures within five years following the end of production. The trial court's consequent determination that defendants had forfeited title to the fixtures by failing to remove them within a reasonable time was in accord with the prevailing rule vesting title in the surface owners. See 4 Williams, Oil & Gas Law, § 674.2, p 215, and *Terry v Crosswy, supra.*

Finally, defendants object to the award of attorney fees pursuant to MCL 554.282; MSA 26.1162, which provides:

> Should the owner of such lease neglect or refuse to execute a release as provided by this act, then the owner of the leased premises may after giving notice as provided in section 1 of this act, in lieu of the method prescribed in the preceding section, sue in any court of competent jurisdiction to obtain such release, and he may also recover in such action of the lessee, his successors or assigns, the sum of $100.00 as damages, and all costs, together with a reasonable attorney's fee for preparing and prosecuting the suit, and he may also recover any additional damages that the evidence in the case will warrant.

Our review of the record reveals that the acting circuit judge did not award actual attorney fees, as argued by defendants, but reduced the claimed amount to reflect a reasonable fee for the amount and type of work performed. Accordingly, we find no error. Plaintiffs have requested attorney fees necessitated by this appeal. Though we have located no cases on this issue, the statutory language appears broad enough to cover such a request. We remand to the trial court for a hearing

and determination of reasonable attorney fees on appeal.

Affirmed and remanded for further proceedings consistent with this opinion. We do not reserve jurisdiction.