RORKE v SAVOY ENERGY, LP

Docket No. 239747. Submitted October 6, 2003, at Marquette. Decided
December 30, 2003, at 9:10 A.M. Leave to appeal denied, 470 Mich
___.

John A. Rorke and Pamela G. Rorke brought an action in the Alcona
Circuit Court against Savoy Energy, LP, seeking to prevent the
defendant from using a reopened oil well on the plaintiffs' property
to drill for oil located underneath a parcel owned by a surface
owner other than the plaintiffs. The defendant had obtained the oil,
gas, and mineral rights to the parcels involved under a lease that
was executed before the land was subdivided. The court, Joseph P.
Swallow, J., granted summary disposition for the defendant, deter-
mining that the defendant had acted in accordance with the lease
granting it subsurface rights and that the plaintiffs had failed to
object to the defendant's drilling plan at an administrative hearing
concerning the scope of the drilling operation and therefore could
not bring a circuit court claim. The plaintiffs appealed.

The Court of Appeals *held*:

1. There is no authority for the plaintiffs' proposition that when
the surface of land covered by an oil and gas lease is later subdi-
vided, that subdivision somehow diminishes the lessee's right to
drill. The lease states that the lessee can extract oil from any well
or mine on the leased premises. At origination, the lease covered
subsurface mineral rights for a larger parcel, from which the plain-
tiffs purchased a smaller parcel. The defendant cannot be expected
to drill straight down on each of the smaller parcels.

2. The plaintiffs have failed to establish that the original well that
the defendant reopened had been abandoned and that title had
transferred to the plaintiffs. MCL 554.291 prevents a lessee from
being deemed to have suffered abandonment of any oil or gas
rights if any of the statutorily specified activities occurred within
twenty years. The lease had not lain dormant for twenty years.

Affirmed.

GAS AND OIL — MINES AND MINERALS — SUBSURFACE RIGHTS — SUBDIVISION.

A lessee who holds the oil, gas, or mineral rights to a parcel under a
lease executed before the parcel is subdivided into smaller parcels
does not suffer a diminishment of its rights upon subdivision and

thus may use the surface of one such smaller parcel for the extraction of oil, gas, or minerals located beneath the surface of another such smaller parcel.

*Rosi Law Offices, P.C.* (by *Philip R. Rosi* and *Gary Allen Gardner*) (*Jo Ann M. Carlson*, of counsel), for the plaintiffs.

*Miller, Johnson, Snell & Cummiskey, PLC* (by *James R. Peterson* and *D. Andrew Portinga*), for the defendant.

Before: METER, P.J., and SAAD and SCHUETTE, JJ.

METER, J. Plaintiffs appeal as of right from the circuit court's order granting defendant's motion for summary disposition. We affirm.

Plaintiffs owned the surface rights to a piece of property, while defendant owned the oil, gas, and mineral rights. Defendant reopened a capped oil well on plaintiffs' property and used it to drill underneath and beyond plaintiffs' land. Plaintiffs objected to the reopening of the well, claiming that defendant could not use plaintiffs' surface to drill to a bottom hole located under another surface owner's land. The circuit court granted summary disposition to defendant under MCR 2.116(C)(8) and (C)(10), reasoning that (1) defendant acted properly and in accordance with the lease granting it subsurface rights and (2) plaintiffs failed to object to defendant's actions at a particular administrative hearing concerning the scope of the drilling operation and therefore could not bring a circuit court claim.

On appeal, plaintiffs argue that the circuit court erred in concluding that the lease permitted defendant to drill from plaintiffs' surface to a bottom hole located under another surface owner's land.

We review de novo a circuit court's decision with regard to a motion for summary disposition. *Trost v Buckstop Lure Co, Inc*, 249 Mich App 580, 583; 644 NW2d 54 (2002). A motion brought under MCR 2.116(C)(10) tests the factual support for a claim. *Lewis v LeGrow*, 258 Mich App 175, 192; 670 NW2d 675 (2003). In reviewing a motion granted under MCR 2.116(C)(10), this Court " 'must consider the available pleadings, affidavits, depositions, and other documentary evidence in a light most favorable to the nonmoving party and determine whether the moving party was entitled to judgment as a matter of law.' " *Michigan Ed Employees Mut Ins Co v Turow*, 242 Mich App 112, 114; 617 NW2d 725 (2000), quoting *Unisys Corp v Comm'r of Ins*, 236 Mich App 686, 689; 601 NW2d 155 (1999). A motion brought under MCR 2.116(C)(8) tests the "legal sufficiency of the complaint" and permits dismissal of a claim if the opposing party has failed to state a claim on which relief can be granted. *Maiden v Rozwood*, 461 Mich 109, 118-119; 597 NW2d 817 (1999). Only the pleadings are examined; documentary evidence is not considered. *Id.* at 119-120. If the claim is clearly unenforceable as a matter of law and no factual development could lead to recovery, a motion under MCR 2.116(C)(8) should be granted. *Maiden, supra* at 119.

The owner of a fee simple estate may sever the ownership of the surface estate from the ownership of subsurface mineral, oil, and gas interests. See *Southwestern Oil Co v Wolverine Gas & Oil Co*, 181 Mich App 589, 591; 450 NW2d 1 (1989). This is typically accomplished by leasing the subsurface rights. The lease at issue in this case states, in part:[1]

---

[1] We note that an earlier lessee assigned the lease to defendant.

*Lessor does hereby grant, lease and let exclusively unto Lessee,* his heirs, legal representatives, successors and assigns, *all of the land hereinafter described,* including all interests Lessor may acquire by operation of law, reversion or otherwise therein, *for the purpose of* exploring by geological, geophysical and all other methods, and of *drilling, producing and operating wells* or mines *for the recovery of oil, gas and other hydrocarbons,* and all other gaseous substances, including but not limited to carbon dioxide and all other minerals or substances, whether similar or dissimilar, *that may be produced from any well or mine on the leased premises, including* primary, secondary, tertiary, cycling, pressure maintenance methods of recovery and all other methods, whether now known or unknown, with *all incidental rights thereto,* and to utilize abandoned wells and/or drill wells for surface and subsurface disposal of salt water, whether produced from the below land or otherwise, and to use existing roadways and to construct, maintain, and remove roadways, tanks, pipelines, electric power and telephone lines, power stations, machinery and structures thereon, to produce, store, transport, treat, own and remove all substances described above, and the products therefrom, together with the right of ingress and egress to and from said land and on, over and across land owned or claimed by Lessor adjacent and contiguous thereto. [Emphasis added.]

Significantly, this lease was executed before the land was subdivided and sold to different surface owners. Although plaintiffs purchased a portion of the surface area affected by the lease, they did not purchase all of it. Accordingly, while the bottom hole of defendant's well was not located under plaintiffs' surface land, it *was* located within the subsurface land granted to defendant in the lease. Plaintiffs cite no Michigan authority for the proposition that even though defendant's lease covered all the areas in question, defendant was prohibited from using plaintiffs' surface to drill to another area of its own leased land. The foreign cases plaintiffs cite to support their

position are not binding on us, and, additionally, they do not clearly present the situation at issue here, in which the surface land was subdivided after the sub-surface rights were leased.

Scenarios involving subdivided surface parcels have been addressed in *Rice v Stapleton*, 502 SW2d 522 (Ky App, 1973), and *Schlueter v Shawnee Operating Co*, 141 Misc 2d 1000; 535 NYS2d 867 (1988). In *Rice*, the court considered the rights of the parties where the plaintiff owned a sixty-acre surface estate and the defendant owned an underlying, ninety-five-acre mineral estate. *Rice, supra* at 523. The defendant owned the mineral rights before the tract was subdivided, with part being sold to the plaintiff and the remaining thirty-five acres being sold to another person. *Id.* The plaintiff asserted that the defendant only had the right to mine directly beneath the thirty-five acre plot. *Id.* With regard to that contention, the court held, "The right to extract minerals underneath both tracts was granted in 1903 and the rights of the mineral owner were fixed by that instrument. We fail to see how the rights of the mineral owner could be eroded or whittled away by a subsequent subdivision of the surface." *Id.*

In *Schlueter, supra* at 1001, a subdivided parcel was also at issue. The defendant owned the subsurface rights to a parcel of land of which plaintiff owned part of the surface. *Id.* at 1001-1002. The defendant placed an oil pipeline over the plaintiff's surface, and the plaintiff claimed trespass. *Id.* at 1002. The court noted that in *Wall v Shell Oil Co*, 209 Cal App 2d 504; 25 Cal Rptr 908 (1962), "the owners of an oil and gas lease were entitled to use any portion of the land subject to the lease to effectuate their rights without regard to any subsequent divisions to the sur-

face ownership . . . ." *Schlueter, supra* at 1003. The court stated:

> " '[E]ach subsequent purchaser of a subdivision thereof, taking with notice of the prior sale and reservation of rights, takes knowing that his surface ownership may be burdened in part, and, in very rare cases perhaps, in its totality, by the reasonable exercise of the rights of the owner of the oil and mineral estate; and this without regard to whether or not the oil or mineral underlies the particular subdivision, or whether the facilities located thereon serve facilities located without the subdivision, so long as they do not lie beyond the original tract."
>
> " 'If a particular facility is necessary and convenient to the operations of the oil and mineral owner, it may be placed anywhere upon the surface area in which he has the right of user, so long as such placement is reasonable under prevailing conditions and even though such placement in particular instances may work a hardship on the surface owner.' " [*Id.* at 1003-1004, quoting *Wall, supra* at 513, 517.]

We agree with the reasoning in *Rice, supra* at 523, and *Schlueter, supra* at 1003-1004. There is no authority for the proposition that when the surface of land covered by an oil and gas lease is later subdivided, that subdivision somehow diminishes the lessee's right to drill. The lease in the instant case states that the lessee can extract oil "from any well or mine on the leased premises," and defendant simply did so.

Additionally, as defendant persuasively argues, plaintiffs' desired result is illogical. If, for example, a surface owner subdivided a surface estate into fifty small parcels, and the lessee entitled to the oil and gas rights was not permitted to use a well bore to drill anywhere other than straight down, the lessee would be forced to construct fifty wells to explore the subsurface. In the face of Michigan's strong policy

against waste, see MCL 324.61502, MCL 324.61504,
and MCL 324.61505, which the Legislature has defined
as, inter alia, drilling unnecessary wells, see MCL
324.61501(q)(ii)(D), plaintiffs' proposition is not
tenable.

The terms of the lease were clear, and therefore
the circuit court properly ruled, as a matter of law,
that the lease permitted defendant's actions.[2] See,
generally, *Michaels v Amway Corp*, 206 Mich
App 644, 649; 522 NW2d 703 (1994) (if the terms of a
contract are clear, factual development is unneces-
sary and summary disposition may be granted). While
we agree with plaintiffs that whether the lease per-
mitted defendant's actions was a question of property
rights and contract interpretation—and that plaintiffs,
therefore, were not required to object to defendant's

---

[2] Plaintiffs argued below, as part of their claim, that defendant acted
unreasonably in its drilling. On appeal, plaintiffs contend that whether
defendant acted unreasonably must be decided by a trier of fact. How-
ever, in their appellate brief, plaintiffs continually tie the "reasonableness"
issue to the issue of the directional drilling. In other words, plaintiffs
argue that defendant acted unreasonably *because* it used plaintiffs' surface
to drill to a bottom hole located under another surface owner's land. This
argument involves the application of a clearly worded contract and was
properly resolved by the circuit court. To the extent plaintiffs are attempt-
ing to argue that defendant acted unreasonably in the general manner of
its drilling, their briefing is inadequate. See, generally, *Goolsby v Detroit*,
419 Mich 651, 655 n 1; 358 NW2d 856 (1984). At any rate, questions of rea-
sonableness are within the purview of the specialized knowledge of the
supervisor of wells. See, generally, MCL 324.61501 *et seq.* Plaintiffs failed
to exhaust their administrative remedies with regard to the reasonable-
ness of the general manner of the drilling. While the trial court, in its opin-
ion, did not use the phrase "failure to exhaust administrative remedies"
and instead referred to plaintiffs' silence at one particular administrative
hearing, we note that an appellate court may affirm a circuit court's order
if it reaches the right result for the wrong reason. *Becker-Witt v Bd of
Examiners of Social Workers*, 256 Mich App 359, 365; 663 NW2d 514
(2003). Further, we decline to accept plaintiffs' unripe assertion that the
administrative procedures surrounding the granting of drilling permits do
not comport with basic notions of due process.

actions at the administrative level before suing in circuit court—we nonetheless cannot agree that plaintiffs are entitled to appellate relief. The circuit court correctly granted summary disposition to defendant. Moreover, the court did not abuse its discretion, see *Backus v Kauffman (On Rehearing)*, 238 Mich App 402, 405; 605 NW2d 690 (1999), in denying plaintiffs' motion to amend the complaint to add claims related to a second drilling that defendant performed in the same surface location. Indeed, the proposed amended complaint largely involved the issues addressed and resolved in defendant's favor in this opinion. See *Weymers v Khera*, 454 Mich 639, 658; 563 NW2d 647 (1997) (leave to amend may be denied if the amendment would be futile). To the extent that the proposed amended complaint contained new issues, plaintiffs have not sufficiently demonstrated in their appellate arguments that these new issues would have been viable. See, generally, *Goolsby v Detroit*, 419 Mich 651, 655 n 1; 358 NW2d 856 (1984).[3]

In a footnote, plaintiffs also appear to claim that the original well was abandoned and that the title transferred to them. Plaintiffs have not established that they are entitled to relief with respect to this issue. With regard to abandoning wells, MCL 554.291 states:

> Any interest in oil or gas in any land owned by any person other than the owner of the surface, which has not

---

[3] In a footnote in their appellate brief, plaintiffs briefly suggest that the assignment of the oil and gas lease to defendant did not extend to the date of some of the disputed drilling. We decline to address this issue because plaintiffs give it such cursory treatment. *Id.* Moreover, plaintiffs did not raise the "expiration of assignment" argument in the original complaint or the proposed amended complaint.

been sold, leased, mortgaged or transferred by instrument recorded in the register of deeds office for the county where such interest is located for a period of 20 years shall, in the absence of the issuance of a drilling permit as to such interest or the actual production or withdrawal of oil or gas from said lands, or from lands covered by a lease to which such interest is subject, or from lands pooled, unitized or included in unit operations therewith, or the use of such interest in underground gas storage operations, during such period of 20 years, be deemed abandoned, unless the owner thereof shall, within 3 years after the effective date of this act or within 20 years after the last sale, lease, mortgage or transfer of record of such interest or within 20 years after the last issuance of a drilling permit as to such interest or actual production or withdrawal of oil or gas, from said lands, or from lands covered by a lease to which such interest is subject, or from lands pooled, unitized, or included in unit operations therewith, or the use of such interest in underground gas storage operations, whichever is later, record a claim of interest as hereinafter provided. Any interest in oil or gas deemed abandoned as herein provided shall vest as of the date of such abandonment in the owner or owners of the surface in keeping with the character of the surface ownership.

The phrase "drilling permit" shall mean a permit to drill an oil or gas well issued by the conservation department or its successor.

As noted by this Court in *Mask v Shell Oil Co*, 77 Mich App 25, 30-32; 257 NW2d 256 (1977), a lessee under a new lease will be held not to have abandoned gas and oil rights to the surface owners under MCL 554.291 if any of the specified activities occurred within twenty years. Plaintiffs' abandonment claim is without merit under this statute because the lease has not in fact lain dormant for twenty years. Plaintiffs cite *Toles v Maneikis*, 162 Mich App 158, 168-169; 412 NW2d 263 (1987), in which the Court concluded that certain fixtures originally owned by subsurface les-

sees had transferred to the surface owners because the lessees failed to remove the fixtures within five years after the end of production of a well. However, the Court in *Toles* rested its opinion on the fact that the lease had expired by its terms. *Id.* at 167-168. Plaintiffs make no attempt to analogize the instant case to *Toles* by demonstrating a comparable expiration under the specific terms of the lease. A party may not rely on this Court to make his arguments for him. See *Goolsby, supra* at 655 n 1.

Affirmed.