## Locke v. Palmore.

November 30, 1948.

J. R. White for appellant.

Marion Vance for appellee.

OPINION OF THE COURT BY JUDGE SILER—Affirming.

E. E. Palmore, oil and gas lessee, the appellee, recovered judgment against Less Locke, his lessor, the appellant, for possession of certain oil well equipment and drilling tools or the reasonable value thereof, Locke appeals.

It is contended that the judgment is reversibly erroneous, because all the evidence showed that title to the

controversial equipment had become vested in Locke upon Palmore's failure to remove same within a reasonable time after the lease had expired.

Palmore is an elderly Horse Cave physician who appears to engage somewhat actively in oil and gas operations. Locke is a Hiseville farmer and landowner. So, on April 14, 1938, Locke leased his land to Palmore for "one year from this date, and as long thereafter as oil or gas, or either of them is produced from said land by the lessee." And the lease provides that the "lessee shall have the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing."

It was established that production of oil from one small well began upon this property and under this lease in 1938 or 1939 and then continued spasmodically, yet surely, until the first half of 1945. Both sides seem to agree that there was no *actual* production of oil on this lease after the first half of 1945. Palmore said that any output after the first part of 1945 was prevented by war's aftermath of shortages, both as to labor and materials, including gasoline. But, under any circumstances, 1945's latter half, 1946's entirety and 1947's first third passed through time's hourglass with no *actual* production of oil on this lease.

Notwithstanding lack of actual production of oil, it appears that the lessor and lessee both considered this well as one of some continuing prospect and some remaining possibility right on up until the fall of 1946 or the early part of 1947, when these parties met and thereupon definitely discussed a final cessation of production. The well, uncapped and unsealed, seems to have remained ready, until late 1946, for productive efforts, just like a fertile field waiting for a plow under the springtime sun. Even so, this oil well appears to have been waiting for the willing hand of an able operator or pumper, even during the time of its inactivity. Of course, the well's output had never been more than modest and irregular. Nevertheless, the well appears to have been about as potentially productive, up until this decision between the parties in the fall of 1946, as it had been in all of the previous months of the former years of this lease. It occurs to us that the old family well, with its

moss covered bucket and its cool, clear drinking water, would still be in production, even though the family itself might be gone off to Dayton to work for "Frigidaire" or elsewhere. Likewise, the uncapped, unpumped well of this lease remained in production until the judgment of these parties was pronounced against it in late 1946 or early 1947. Production, in a broad sense, is not a continuing usage. Rather, it is a continuing possibility, we believe, in a situation of this kind.

Locke testified that he and Palmore conferred in the fall of 1946 about this well and that they then discussed, in a general way, the lease's termination. Palmore also testified that this conference occurred, but that the time of its occurrence was in the early part of 1947. We consider that this conference, at whichever time it occurred, marked the end of production for this little oil well. The conference itself sounded the death knell, but prior to the conference, the well still had the hope of life and the life of hope, according to our viewpoint.

If we accept Locke's fixation of time, it seems to us that the lease's cessation, as determined by a practical meeting of the minds of both parties on this question occurred in the fall of 1946. There had been no recognized abandonment of this well prior to the 1946 conference, as we see this situation. And, if Locke's fixation of time is correct, then Palmore had a reasonable period thereafter, that is after the lease's cessation in the fall of 1946, to remove his property. Palmore appears to have attempted to remove his property around the first of May of 1947 or about six months after the cessation of the lease as pronounced by the practical agreement of the parties. Therefore, we think Palmore acted within a reasonable time.

Under the text of 24 American Jurisprudence 578, we find the following statement:

"As a general rule, a lessee desiring to remove his machinery, etc., must act within the term of the lease or within a reasonable time after its expiration, notwithstanding the lease purports to authorize him to do so 'at any time.' What constitutes a reasonable time depends, of course, upon the particular circumstances. In one case, the court permitted the lessee to remove his casing,

although he had done no work upon the leasehold for several years.''

Application of all the foregoing text upon our instant case would appear to give Palmore the right to remove his property from Locke's land in the spring of 1947, when he made the attempt, regardless of whether the lease expired at the cessation of *actual production* in the spring of 1945 or at the cessation of *potential production* in late 1946.

But, under any consideration, the court cannot forget that Palmore bought all this equipment and then reserved the right to remove it. Neither can it forget that an operation such as this is in the nature of a joint enterprise of mutual benefit and that in this particular operation both sides seemed happy and satisfied over this little oil well's status, even though it was a mere ''sleeping beauty,'' up until late 1946 or early 1947, when both sides gave it the coup de grace of final extermination. And, since Palmore moved in for his equipment within a few months after the well's final coup, he was reasonably punctual rather than unreasonably tardy. Accordingly, we think he was rightly adjudged possession of this equipment or its value upon this trial.

Now, therefore, the judgment is affirmed.