HOUSER, CHIEF, DIVISION OF OIL AND GAS, OHIO DEPARTMENT OF NATURAL RESOURCES, APPELLANT, *v.* BROWN, APPELLEE.

(No. 86AP-230 — Decided December 30, 1986.)

*Anthony J. Celebrezze, Jr.,* attorney general, and *Dominic J. Hanket,* for appellant.

*Marini & Russell* and *Francis J. Marini,* for appellee.

MOYER, P.J. This matter is before us on the appeal of Renee J. Houser, Chief, Division of Oil and Gas, Ohio Department of Natural Resources, from a judgment of the Franklin County Court of Common Pleas affirming an order of the Oil and Gas Board of Review (the "board").

The board had reversed an order of the Chief of the Division of Oil and Gas issued to Randy D. Brown requiring him to plug or put into production five oil wells. The oil wells were located on property owned by Sharon Herold in Columbiana County, Ohio. The order was issued January 18, 1984 following an on-site inspection on August 18, 1983. The investigation revealed that the wells were idle and not capable of producing oil or gas in commercial quan-

tities and that Randy D. Brown was the "owner" as defined in R.C. 1509.01(K).

The Chief of the Division of Oil and Gas subsequently found out that Brown had cancelled his oil and gas lease on the subject premises on September 18, 1983. The chief then issued a second plug or produce order on April 12, 1984 to Sharon Herold as the owner of the premises.

Both Randy Brown and Sharon Herold appealed these orders to the Oil and Gas Board of Review. The appeals were consolidated and, following a hearing, the board issued its decision on April 9, 1985. In its decision, the board reversed the order to Randy Brown, finding that he was not the "owner" of the wells at any relevant time. In addition, the board affirmed the order to Sharon Herold, finding that she was the "owner" when the chief learned of the inability of the wells to produce and the necessity of plugging the wells.

The chief appealed the decision reversing the Brown order to the court of common pleas. Sharon Herold did not appeal the order. A hearing was held before a referee. The referee issued a report recommending Randy Brown be found to be the "owner" of the wells and thus responsible for plugging them. Following objections to the referee's report, the trial court approved the report as to the findings of fact but modified it as to the conclusions of law and held that the owner of the wells, for purposes of R.C. 1509.12, is the owner at the time of the issuance of the order to plug.

The chief has timely appealed from that judgment and raises the following assignments of error:

"1. The trial court erred in holding that the 'owner' as that term is defined in R.C 1509.01(K) responsible for plugging the subject wells pursuant to R.C 1509.12 is the person who has such status at the time the chief issues the order.

"A. In enacting R.C. 1509.12, the General Assembly intended to require that persons who drill and produce oil and gas wells meet their responsibilities to plug oil and gas wells that are incapable of producing oil and gas in commercial quantities.

"B. Jurisdictions confronting the issue of whether an owner of a well may absolve himself from responsibility for plugging a well by a simple lease cancellation have held that such person cannot avoid his responsibilities in such fashion.

"C. The person who has the right to drill on a tract or drilling unit and to drill into and to produce from a pool and to appropriate the oil or gas that he produces therefrom either for himself or for others is the person responsible for plugging a well that is or becomes incapable of producing oil or gas in commercial quantities.

"E [*sic*]. Mr. Brown could not sidestep his responsibility to plug the wells by simply assigning his interest in the wells back to the landowner prior to the issuance of the plugging order.

"F. The trial court's conclusion that safety orders should run with the land has no basis in law and constitutes judicial legislation which should be refuted by this court.

"G. To adopt the holding of the trial court that an owner of a well can avoid his responsibility to plug a well by simply transferring his interest back to the landowner prior to the issuance of the plugging order leads to absurd consequences.

"2. The trial court erred in holding that the decision of the Oil and Gas Board of Review is supported by some evidence in the record and [is,] therefore, just and reasonable.

"3. The trial court erred in failing to find that Mr. Brown was responsible for plugging the subject wells pursuant to R.C. 1509.15."

The first and third assignments of error are interrelated and will be dis-

cussed together. Appellant contends, for several reasons, that Brown, the lessee, is the party responsible for plugging the wells. R.C. 1509.12 provides in part:

"Unless written permission is granted by the chief, any well which is or becomes incapable of producing oil or gas in commercial quantities shall be plugged * * *. When the chief finds that a well should be plugged, he shall notify the owner to that effect by order in writing and shall specify in such order a reasonable time within which to comply. No owner shall fail or refuse to plug a well within the time specified in the order. Each day on which such well remains unplugged thereafter constitutes a separate offense."

"Owner" is defined in R.C. 1509.01 (K) in the following manner:

" 'Owner,' unless referring to a mine, means the person who has the right to drill on a tract or drilling unit and to drill into and produce from a pool and to appropriate the oil or gas that he produces therefrom either for himself or for others."

Appellant contends that Randy Brown is responsible for plugging the wells, as he was the person who had the right to drill, produce and appropriate the oil from the wells in question. Mr. Brown secured his right in 1979, when he acquired the leases by assignment as part of a real estate transaction. Brown then assigned part of his drilling rights to Bill Blair, Inc., in February 1980. On September 3, 1983, the Herolds disconnected Brown's surface operating equipment from the wells. Brown subsequently filed a partial cancellation of the lease and, within a few days, received a letter from the Herolds' attorney requesting Brown cancel the lease.

The evidence presented at the hearing also established that the subject wells had not produced since 1973. Further, the evidence revealed that the division had been aware of the dormant condition of the wells since at least 1973.

Brown contends that he was no longer the owner within the meaning of R.C. 1509.01(K) when the order from the Division of Oil and Gas was issued on January 18, 1984 due to the cancellation of the lease.

Nonetheless, R.C. 1509.12 establishes the duty to plug any well "which is or becomes incapable of producing oil or gas * * *." Thus, a new lessee or new owner may, in essence, inherit the duty to plug a well if, in fact, he leases a well which is incapable of producing. The plain language of the statute requires this result, as does the policy of requiring the plugging of unproductive wells. This result is further bolstered by the reality of the oil and gas business, where many wells were drilled during the turn of the century. Several of these companies are now out of business and to hold only the original "owner" responsible for plugging the nonproductive wells would defeat the purpose of the statute.

Additionally, the duty created by R.C. 1509.12 is a continuing duty. Once the well becomes incapable of producing in commercial quantities, the duty to plug attaches. An owner's later transfer of the right to produce does not absolve that person of the continuing obligation to plug the well. Therefore, assuming the subject wells were incapable of production in commercial quantities when Brown was assigned the lease in 1979, Brown had a duty at that time to plug the wells. Brown could not escape that duty by cancelling the lease prior to the chief's January order.

The chief correctly issued an order against both Brown and Herold. Upon appeal, the board's decision was predicated solely upon an erroneous conclusion of law that Brown has no duty to plug because he is no longer the owner. The common pleas court affirmed based upon the same erroneous conclusion of law.

The issue as to whether Herold or Brown should bear the expense of plug-

ging the wells is not before us, this being a private matter between them. However, both have a statutory duty to the public to plug the wells. For protection of the public interest, it makes no difference who (Brown or Herold) plugs the wells; the important issue is that one does so promptly. The chief correctly ordered both to plug the wells. The board erred in reversing the chief's order to Brown upon the basis he has no duty to plug since he does have such a statutory duty to the public.

The first and third assignments of error are therefore sustained.

In the second assignment of error, appellant contends that there was no evidence to support the finding of the board that the wells were incapable of production in January 1984. The appellant claims this finding was against the manifest weight of the evidence, as there was testimony that the wells had been incapable of production since 1973. Although there was conflicting testimony, there was evidence to support the board's finding that the chief discovered the wells' condition in January 1984. The board based this finding on the fact that the chief issued the order on January 18, 1984.

Accordingly, the court correctly determined that the decision of the board of review was supported by evidence in the record and was, therefore, just and reasonable. The second assignment of error is not well-taken.

The first and third assignments of error are sustained in accordance with this opinion, the second assignment of error is overruled, and the judgment of the court of common pleas is reversed.

*Judgment reversed and cause remanded.*

WHITESIDE and MARTIN, JJ., concur.

MARTIN, J., of the Carroll County Court of Common Pleas, sitting by assignment in the Tenth Appellate District.