**PRO GAS, INC., Appellant,**

v.

**HAR–KEN OIL COMPANY, Appellee.**

No. 93–SC–751–DG.

Supreme Court of Kentucky.

Sept. 1, 1994.

Hunter Durham, Durham & Zornes, Columbia, for appellant.

Harry L. Mathison, King, Deep and Branaman, Henderson, for appellee.

REYNOLDS, Justice.

Emanating from the Commonwealth's public policy upon oil and gas conservation is an issue, in this case, which bears upon the determination of the party(s) obligated to plug oil and gas wells and the responsibility to post bond with the Department of Mines and Minerals to ensure the plugging of such wells.

In December of 1989, a trustee in bankruptcy for Empire Oil & Gas Company, Inc. and Amberco, Inc. assigned, transferred and conveyed to Pro Gas, Inc., for the sum of $375,000, the right, title and interest of the two bankrupt companies in and to described oil and gas leases. The assignment provided that the trustee was entitled to the proceeds of all oil previously sold and Pro Gas, Inc. was entitled to all proceeds from the sale of oil located in tanks on the leases.

The assignment provided that Pro Gas, Inc. assume the responsibility for obtaining satisfactory bonds evidencing financial responsibility to the Department of Mines and Minerals and agree to immediately execute and file all necessary well transfer forms pertaining to oil wells and facilities with the state of Kentucky, or, in the alternative, to be responsible for the plugging of same. The well transfer forms were not executed and the transfer of the plugging operation was ignored.

Har–Ken (appellee/plaintiff below) instituted this action in March 1991, maintaining that it was the party liable on the well plugging bonds heretofore posted with the Department of Mines and Minerals, and that it has not been released therefrom. A special judge of the Ohio Circuit Court, by order, dismissed the complaint and the Court of Appeals subsequently vacated the order and remanded the action to the trial court with directions for Pro Gas to comply with KRS 353.590(6).

This record, although scant, is substantiated by the admissions as to the genuineness of the oil and gas lease assignments dated December 12, 1989. The identities of the leases are also of record.

Appellee alleged that Pro Gas was the owner of an interest in, and the operator of, described oil and gas leases/wells located in Ohio County, Kentucky, and the wells were, at that time, covered by its bond to the Department of Mines and Minerals to ensure the proper and ultimate plugging which is required by KRS 353.590. Pro Gas was stated to be a "successor well operator" and obligated, statutorily, to replace Har–Ken's bond with its own. It is further claimed that Pro Gas was obligated by the contractual assignment to "immediately execute all necessary well transfer forms covering all wells and facilities with the state of Kentucky and cause same to be filed with the Department of Mines and Minerals, Division of Oil and Gas, or, in the alternative, to be responsible for the plugging of same."

A determinative question arising in this appeal is whether the former operator of the wells is responsible for plugging, or whether the most recent assignee, Pro Gas, is required, by KRS 353.590(6), to assume the obligation.

Pro Gas acquired its interest in the oil and gas leases through the December 12, 1989, assignment from the bankruptcy trustee to itself and the version of KRS 353.590(6) existing on that date is alleged to be materially different from the provision that currently exists. It is maintained that the Court of Appeals erroneously construed the more recent statute to be retroactive without it having been expressly declared so by the legislature. The argument lacks merit as retroactiveness is not a factor at issue.

The version of KRS 353.590(6) in existence at the time of the execution of the assignment read:

> Notification in writing to the department by a successor to the well operator with bond as provided in subsection (5) that said successor is assuming the obligations of this chapter as to a particular well or wells, will relieve the original permittee of responsibility under this chapter with respect to such well or wells.

KRS 353.590(6) was improved, effective July 13, 1990, to read:

> A successor to the well operator shall post bond and notify the department in writing in advance of commencing use or operation of a well or wells. The successor shall assume the obligations of this chapter as to a particular well or wells and relieve the original permittee of responsibility under this chapter with respect to the well or wells. It shall be the responsibility of the selling operator to require the successor operator to post bond before use or operation is commenced by the successor and relief of responsibility under this chapter is granted to the original permittee.

The changes enumerated above are illustrative ones which flow from the historical development of the oil and gas well industry. Generally, the public has an interest in the preservation of oil and gas from destruction or waste, which is based upon the peculiar nature of these minerals. The Kentucky legislature, in 1960, enacted KRS 353.500, declaring it to be the public policy of this Commonwealth to foster conservation of all mineral resources and, to that end, *the enactment provided that KRS 353.500 through KRS 353.720 shall be liberally construed to give effect to such public policy. Smith v. Rogers,* Ky., 702 S.W.2d 425 (1986). Legislatively, there has been an exercise and broadening of powers in conserving oil and gas and in preventing the unnecessary depletion thereof. In this regard, public policy is applicable to the determination of duties and obligations of well operators in the ongoing development or the termination of oil/gas production.

There are several similarities existing in the interpretation of both the earlier and the current provisions of KRS 353.590(6). This was both collaterally evident and explicitly acknowledged by appellant when it acquiesced and accepted in its contract of assignment such language as:

> Progas assumes responsibility for obtaining satisfactory bond or bonds evidencing financial responsibility in an amount satisfactory to the Commonwealth of Kentucky, Department of Mines and Minerals, Division of Oil and Gas, and if necessary satisfactory to the United States Environmental Protection Agency. Progas agrees that it will immediately execute all necessary well transfer forms covering all wells and facilities with the State of Kentucky and cause same to be filed with the Department of Mines and Minerals, Division of Oil and Gas, or in the alternative, to be responsible for the plugging of same.

The duty of plugging could be no plainer than the statement that next appears in the assignment negotiated for and accepted by appellant and being: "It is agreed and understood that all injection wells and apparatus are transferred to Progas and Progas shall be responsible for obtaining rule authorization for said wells or in the alternative, the plugging of same." The statutory interpretation/requirement is at issue rather than enforcement of the assignment terms which are collaterally illustrative of this conservation requirement.

Legislation pertaining to plugging abandoned wells appears in KRS 353.180(1) and predecessor statutes, which hold that one who abandons a well or removes casings from the well must plug it. A statutory duty to plug has existed since the turn of the century, and construction of earlier statutes is stated in *Clarke v. Blue Licks Springs Co.,* 184 Ky. 827, 213 S.W. 222 (1919).

The purpose of the statutory scheme is to the effect that an operator shall plug a well. This is clearly demonstrated by the provisions of 805 KAR 1:070 (eff. 6–11–75), which provide: "no operator or owner shall permit any well drilled for oil, gas, salt water disposal or any other purpose in connection with the production of oil and gas, to remain unplugged after such well is no longer used

for the purpose for which it was drilled or converted."

KRS 353.590(6) was not intended to be retroactive in enforcement. No requirement exists that appellant statutorily secure a bond for the period of time prior to the latest enactment. It requires, simply, that appellant put in place its own financial responsibility for the ultimate plugging of wells. We interpret that KRS 353.590(6) provides for a duty that is a continuing one and, therefore, Pro Gas has a statutory duty to conform to the provisions thereof. Any issue as to whether appellee or appellant should bear the expense of plugging, if necessary, is not now before us, this being a private matter between them. It makes little difference who plugs the wells, the important factor being the protection of the public interest which dictates that appellant post the bonds statutorily required.

Stated otherwise and in summary fashion, the statute with which we are concerned is no less applicable and explicit than the provisions of the contractual assignment which appellant failed to assume.

As Pro Gas paid a substantial sum to receive its interest in the aforementioned leases, its argument that some of the acquired leases had been terminated or abandoned or a legal interest therein could not be acquired lacks substance and is a nondeterminative issue in this case. Thus, the axiom "caveat emptor" arises.

■■■■ The Pro Gas argument that it acquired a number of abandoned leases which are valueless, therefore excusing it from any plugging requirements is deceptive, because mere lapse of time and nonuse are not, alone, enough to constitute abandonment of oil and gas leasehold interests. See Cameron v. Le-Bow, Ky., 338 S.W.2d 399 (1960). The record shows no recognized abandonment of any leases or wells. The specter of an abandoned lease, by no means, prohibits a lessee/assignee from removing its machinery, etc. A party has been permitted to remove casings (equipment, buildings) although he had done no work upon the leasehold for several years. The final demise of a well or a lease does not, in and of itself, prohibit a later removal of equipment and it has been held that removal of equipment within a few months thereafter was reasonably punctual rather than unreasonably tardy. See Locke v. Palmore, 308 Ky. 637, 215 S.W.2d 544 (1948).

While the enactment of KRS 353.590(6) does not solve the problem of orphan wells in this state, or require an operator or successor thereto to assume past responsibility, it is a mandatory and current requirement. Oil and gas financial responsibility is not dissimilar to motor vehicle responsibility requirements.

The public policy of other states, not materially different to Kentucky, provides that the duty to plug oil/gas wells may also be imposed upon an assignee of a leasehold. See Houser v. Brown, 29 Ohio App.3d 358, 505 N.E.2d 1021 (1986).

The language of KRS 353.590(6) provides that a "successor to the well operator shall post bond." The language is succinctly clear that "the successor shall assume the obligations of this chapter as to a particular well or wells. . . ." Absent is any requirement that the successor actually operate the leases before the obligation begins. To the contrary, it requires the successor to post bond before use or operation is commenced by the successor. The legislature has clearly enacted a requirement that one acquiring an oil or gas lease with existing wells substitute its bond for the existing bond upon transfer and prior to commencing lease operation.

Definitionally, KRS 353.010(9) provides that a " 'well operator' means any person who proposes to or does locate, drill, operate or abandon any well." Whereas, KRS 353.-510(17) states the general term " 'operator' means any owner of the right to develop, operate and produce oil and gas from a pool and to appropriate the oil and gas produced therefrom. . . ." The definitions are broad and once Pro Gas purchased from the bankruptcy trustee an assignment of the leases, it had to operate the leases or abandon them. No additional options manifest themselves, as the failure to do anything is but the equivalent of an abandonment. Such acts place appellant within the statutory definition of "well operator," imposing thereon the duty to

comply with the bond requirement. Acquiring title to the lease, by design or otherwise, imposes a responsibility.

The opinion of the Court of Appeals is affirmed.

STEPHENS, C.J., and LEIBSON and SPAIN, JJ., concur.

ROGER HALL, Special Justice, and LAMBERT and WINTERSHEIMER, JJ., dissent.