OPINION
{¶ 1} On September 9, 1999, the Chief of the Division of Oil and Gas of the Ohio Department of Natural Resources, now known as the Division of Mineral Resources Management ("division"), issued orders as to two oil and gas wells located in Washington County, Ohio. The chief found that B D Drilling Company ("B D") was the owner of the wells and that inspections performed in June 1999 showed that the wells were incapable of producing oil and/or gas in commercial quantities. Thus, and pursuant to R.C. 1509.12, the chief ordered B D to either place the wells into production or plug the wells.
{¶ 2} By way of brief background, the subject wells were, at the pertinent time, located on property owned by Cecil Brown and later by his daughter, Beverly Dowler. B D had obtained the rights to drill the wells by an assignment of an oil and gas lease on July 24, 1973.[1] B D never produced gas or oil from these wells. Indeed, B D never entered upon the land where the wells were located.
{¶ 3} On September 7, 1979, Cecil Brown, the surface owner, filed an affidavit of forfeiture against B D pursuant to R.C. 5301.332. R.C. 5301.332 allows a lessor to file an affidavit of forfeiture of the lease where the lease becomes forfeited for the failure of the lessee to abide by covenants in the lease or because the lease term has expired. If the lessee does not timely object to a notice of the lessor's intent to declare the lease forfeited, then the county recorder notes in the record of the lease that the lease has been cancelled pursuant to the affidavit of forfeiture, and the record of the lease does not serve as notice to the public of the existence of the lease or of any interest therein or rights thereunder.
{¶ 4} B D did not contest the affidavit of forfeiture. Approximately 20 years later, the inspections took place which led to the chief's September 9, 1999 orders which found B D was the owner of the subject wells. B D, the corporation, was legally dissolved in 1998.
{¶ 5} B D appealed the chief's orders to the Oil and Gas Commission ("commission"). The commission held a hearing. On January 5, 2001, the commission issued an order which included findings and conclusions. The commission found, in part, that by operation of the affidavit of forfeiture, Cecil Brown and his heirs became the owners of the subject wells. The commission concluded that after the filing of the affidavit of forfeiture, B D no longer had the right to produce the wells and, therefore, did not qualify as an "owner" of the wells. In addition, the commission found that the chief failed to produce adequate evidence of when the wells became incapable of producing oil and gas in commercial quantities. The commission stated that the duty to plug a nonproductive well only attaches to those who own a well at the time or after the well becomes unproductive. The commission found the evidence did not establish that the wells became unproductive during B D's ownership of the wells (between 1973 and 1979). Accordingly, the commission determined that the chief's orders were unlawful and unreasonable.
{¶ 6} The division appealed the commission's order to the Franklin County Court of Common Pleas. The parties filed briefs. On December 13, 2001, the common pleas court rendered a decision and judgment entry affirming the commission's order. The common pleas court found that although the commission was incorrect as to some of its findings of fact, its ultimate conclusion that B D was not responsible for plugging the wells was correct.
{¶ 7} The division (hereinafter "appellant") has appealed to this court, assigning the following errors for our consideration:
{¶ 8} "First Assignment of Error:
{¶ 9} "The Common Pleas Court erred when it held that a landowner's filing of an affidavit of forfeiture absolved an operator of its statutory duty to plug wells, and that a landowner's filing of an affidavit of forfeiture shifted an operator's duty to plug to the landowner.
{¶ 10} "Second Assignment of Error:
{¶ 11} "The Common Pleas Court erred by failing to apply Baldwin Producing Corporation, which supports the legal conclusion that the subject wells were incapable of commercial production, as set forth in R.C. 1509.12, at a time when the lease was held by B D."
{¶ 12} We first address the standard of review. R.C. 1509.37
states that any party adversely affected by an order of the commission may appeal to the Franklin County Court of Common Pleas and that if the common pleas court finds that the order of the commission was lawful and reasonable, the order shall be affirmed. See, also, Johnson v. Kell (1993), 89 Ohio App.3d 623, 625, motion to certify overruled in (1993),68 Ohio St.3d 1410. As for this court's standard of review, an appellate court's role in reviewing the order of an administrative agency is more limited than that of a common pleas court. This court does not examine the evidence. Childs v. Oil Gas Commn. (Mar. 28, 2000), Franklin App. No. 99AP-626, citing Lorain City Bd. of Edn. v. State Emp. Relations Bd. (1988), 40 Ohio St.3d 257, 260-261. This court determines only if the common pleas court abused its discretion. Id. However, this court's review of questions of law is plenary. Childs, citing Univ. Hosp., Cincinnati College of Medicine v. State Emp. Relations Bd. (1992),63 Ohio St.3d 339.
{¶ 13} In its first assignment of error, appellant contends the common pleas court erred in finding that the filing of the affidavit of forfeiture in 1979 absolved B D (hereinafter "appellee") of its duty to plug the wells. The issue presented here involves essentially a question of law, which this court reviews de novo: when does the obligation to plug a well attach under R.C. 1509.12? R.C. 1509.12[2]
addresses the duty to plug wells and states, in pertinent part:
{¶ 14} "Unless written permission is granted by the chief, any well that is or becomes incapable of producing oil or gas in commercial quantities shall be plugged * * *. When the chief finds that a well should be plugged, the chief shall notify the owner to that effect by order in writing and shall specify in such order a reasonable time within which to comply. No owner shall fail or refuse to plug a well within the time specified in the order."
{¶ 15} R.C. 1509.01(K) defines "owner" as, "the person who has the right to drill on a tract or drilling unit, to drill into and produce from a pool, and to appropriate the oil or gas produced therefrom either for the person or for others * * *." Our initial interpretation of R.C.1509.12 is that an owner becomes obligated to plug a well when the chief finds that the well is incapable of producing oil or gas in commercial quantities. Hence, it is the owner at the time the chief makes such finding that is responsible for plugging the well. Here, the chief made such a determination after a June 1999 inspection, almost 20 years after appellee lost its right to drill or produce the wells at issue.
{¶ 16} Appellant contends appellee is responsible under R.C. 1509.12
for plugging the wells, despite the 1979 affidavit of forfeiture. Appellant cites the case of Houser v. Brown (1986), 29 Ohio App.3d 358 in support of its position and asserts that Houser held that the owner at the time the well is or becomes unproductive has a continuing duty to plug the well, even if there is a subsequent transfer of producing rights. Appellant states that the evidence showed that the wells here were incapable of production at a time when appellee held the lease and, therefore, appellee is subject to plugging the wells.
{¶ 17} In Houser, an inspection of certain wells was performed on August 18, 1983. Id. at 358. At this time, the owner of the wells was Randy D. Brown. The inspection revealed that the wells were idle and incapable of producing oil or gas in commercial quantities. Id. at 358-359. On January 18, 1984, the chief issued an order to Mr. Brown to plug the wells or put them into production. The chief subsequently found out that Mr. Brown had cancelled his lease on September 18, 1983. Id. at 359. On April 12, 1984, the chief issued a second plug/produce order to the surface owner, Sharon Herold.
{¶ 18} Both Mr. Brown and Ms. Herold appealed to the commission (then known as the Oil and Gas Review Board). The commission found that Mr. Brown was not an owner at any relevant time and that Ms. Herold was the owner at the time the chief learned of the inability of the wells to produce and the necessity of plugging the wells. Id. On appeal, the common pleas court held that under R.C. 1509.12, the "owner" is the owner at the time of the issuance of the plug order. Id.
{¶ 19} On appeal to this court, we noted that the evidence established that the wells had not produced since 1973 and that the division had been aware of the dormant condition of the wells since 1973. Id. at 360. We stated that R.C. 1509.12 establishes the duty to plug any well which is or becomes incapable of producing oil or gas and, therefore, a new lessee or owner may inherit the duty to plug a well if he or she leases a well which is incapable of producing. Id. We noted the "reality of the oil and gas business," where many wells had been drilled during the turn of the century, and several of the companies were now out of business. Id. We stated that it would defeat the purpose of the statute to hold only the original owner of a well responsible for plugging unproductive wells. Id. We then stated:
{¶ 20} "Additionally, the duty created by R.C. 1509.12 is a continuing duty. Once the well becomes incapable of producing in commercial quantities, the duty to plug attaches. An owner's later transfer of the right to produce does not absolve that person of the continuing obligation to plug the well. Therefore, assuming the subject wells were incapable of production in commercial quantities when Brown was assigned the lease in 1979, Brown had a duty at that time to plug the wells. Brown could not escape that duty by canceling the lease prior to the chief's January order." Id.
{¶ 21} We found that the chief correctly issued orders against both Mr. Brown and Ms. Herold as both had a statutory duty to plug the wells. Id. at 360-361. For the reasons that follow, we find that the Houser analysis does not apply to the facts herein, and we reject appellant's argument that Houser dictates that appellee has an obligation to plug the wells in question.
{¶ 22} First, the facts in Houser are distinguishable from the facts presented here. In Houser, the chief was aware that the wells should have been plugged (i.e., were incapable of production), at the earliest, in 1973, and the chief was certainly aware of this fact after the August 1983 inspection. Therefore, the chief was aware that the wells should be plugged at the time Mr. Brown became the owner in 1979 and, again, in August 1983 when Brown was still the owner. It is understandable why this court determined that Mr. Brown was responsible for plugging the well given that he was the owner of the wells at the time of the inspection, which gave rise to the chief's January 1984 order, but had cancelled his lease (and therefore his right to drill and produce the wells) a mere month after the inspection.
{¶ 23} R.C. 1509.12 states, "[w]hen the chief finds that a well should be plugged, the chief shall notify the owner to that effect * * *." (Emphasis added.) Again, this court finds that the plain language of the statute directs that the owner at the time the chief finds that a well should be plugged is the person or entity that may be ordered to plug a well. R.C. 1509.12 does state that "any well that is or becomes incapable of producing oil or gas in commercial quantities shall be plugged," and it appears that it was this portion of the statute that led this court to the conclusion in Houser. Given the facts in Houser, we do not take issue with such conclusion. However, to the extent Houser may be relied upon, as appellant does here, for a broad holding that the duty to plug attaches once a well becomes incapable of producing in commercial quantities and that the chief may properly order a previous owner to so plug, we reject the propriety of any such reliance and find that Houser's holding is limited to its facts.
{¶ 24} Indeed, a plain reading of R.C. 1509.12 does not support an interpretation that the chief may properly order a person to plug a well when such person, who had previously owned the well, did not have the right to drill or produce the well (or otherwise qualifies as an "owner" under R.C. 1509.01[K]) at the time the chief finds that such well should be plugged. R.C. 1509.12 must be read as a whole. The first portion of R.C. 1509.12, relied upon by the Houser court, states that an unproductive well must be plugged. This portion only describes the circumstances under which a well must be plugged. It does not indicate who bears the responsibility to plug such well. Rather, the next portions of R.C. 1509.12 indicate who may be ordered to plug a well. The person who may be ordered to plug a well is the "owner," as defined in R.C. 1509.01(K). When such an order may be made and thus, when the duty to plug attaches, is answered in the portion which states:
{¶ 25} "When the chief finds that a well should be plugged, the chief shall notify the owner to that effect by order in writing and shall specify in such order a reasonable time within which to comply. No owner shall fail or refuse to plug a well within the time specified in the order."
{¶ 26} Clearly, it is the owner (the person who has the right to drill or produce the well) at the time the chief finds that a well should be plugged who may be made responsible under R.C. 1509.12 for plugging a well. The evidence here may show that the wells were incapable of producing at the time appellee was an owner of the wells. However, the chief did not make a finding as to the capabilities of the wells until August 1999 — 20 years after appellee lost the right to drill or produce the wells. In other words, at the time the chief found that the wells were incapable of producing in commercial quantities, appellee had not been an owner of such wells for almost 20 years. We simply do not read R.C. 1509.12 as supporting a conclusion that appellee may be ordered to plug the wells under these circumstances.
{¶ 27} Appellant makes several policy arguments in support of its interpretation of R.C. 1509.12. For example, appellant asserts that the central concern of R.C. 1509.12 is protecting the environment and the public from the dangers of unplugged oil and gas wells. Particularly compelling is appellant's assertion that the lack of a continuing duty to plug would give oil and gas companies the disincentive to plug wells when they become unproductive as these companies could simply give up their rights to the wells.[3] Appellant contends that given these concerns, the better interpretation of R.C. 1509.12 is to impose a continuing duty on any person who was an owner at a time when a well was unproductive.
{¶ 28} We are sympathetic to appellant's concerns. However, if the legislature intended the result appellant wishes to impose, then it could have easily worded the statute to create such a continuing duty. It did not so word the statute, and this court cannot read a duty into a statute where no such duty is clearly set forth. This is certainly true in the case presently before the court.
{¶ 29} Here, appellee had not been an "owner" under R.C. 1509.12
and 1509.01(K) for almost 20 years at the time the chief found the wells to be unproductive. Only when the chief finds that a well is unproductive may he or she order an owner to plug or produce a well under R.C. 1509.12. Because appellee was not an owner at the time the chief found the wells to be incapable of producing in commercial quantities and had not been an owner for almost 20 years, the chief could not order appellee to plug the wells pursuant to R.C. 1509.12. For this reason, the commission did not err in reversing the chief's order, and the common pleas court did not err in affirming the commission's order.
{¶ 30} Accordingly, appellant's first assignment of error is overruled.
{¶ 31} Given our disposition of the first assignment of error, it is unnecessary to address the arguments set forth in appellant's second assignment of error. Indeed, even if we accept that the wells at issue were incapable of commercial production when appellee obtained ownership of the wells and remained unproductive during appellee's ownership, the result does not change. Again, appellee was not an owner at the time the chief found that the wells were unproductive. Hence, the chief could not, pursuant to R.C. 1509.12, order appellee to plug the wells. Accordingly, appellant's second assignment of error is moot.
{¶ 32} In summary, appellant's first assignment of error is overruled, and its second assignment of error is moot. The judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BRYANT and BOWMAN, JJ., concur.
[1] B D, a partnership, was originally assigned the lease. In 1977, the partnership assigned the lease to B D, a corporation.
[2] R.C. 1509.12 was amended (effective June 14, 2000) after the chief's order and prior to the commission's order, but such amendment did not contain substantive changes.
[3] On the other hand, it could be argued that imposing the duty to plug on the present owner of a well would give such owner the incentive to take the steps necessary to render the wells capable of commercial production. Further, our interpretation of the statute would provide motivation to the surface owner to be aware of the status of the wells on his or her land and that if such wells are idle, the surface owner can inform appellant of the situation, and an R.C. 1509.12 order to plug or produce may be issued to the holder of the oil and gas lease.