PROPERTY OWNERS OF LEISURE LAND, INC., Del Mar Property Owners Association, Inc., Donald K. Young and City of Payne Springs, Texas, Appellants,

v.

WOOLF & MAGEE, INC., Appellee.

No. 12–89–00026–CV.

Court of Appeals of Texas, Tyler.

Jan. 19, 1990.

Willis D. Moore, Moore & Moore, Athens, for appellants.

John H. Minton and Potter Firm, Tyler, for appellee.

BILL BASS, Justice.

Appellants (hereinafter "Property Owners") brought suit against Woolf & Magee, Inc. seeking a declaratory judgment and permanent injunction concerning Woolf & Magee's construction of a road on certain lots in a subdivision. Sitting without a jury, the trial court found for Woolf & Magee. By seven points of error Property Owners challenge the legal and factual sufficiency of the evidence to support the trial court's judgment. We affirm.

The controversy in this suit concerns the construction of an emergency evacuation road on lots 67 and 110 in the Del Mar Subdivision in conjunction with the drilling of an oil well. North Central Oil Corp. is the mineral lessee of a tract of land which includes lots 67 and 110. North Central joined other lessees to pool their acreage to form the Woolf & Magee, et al—McCord Oil Unit No. 1 (hereinafter referred to as the "Unit"). Woolf & Magee, the operator of the unit, owns mineral leases within the pooled unit and is the surface owner of lots 67 and 110. The mineral lease on lots 67 and 110 specifically granted the lessee the right to pool the acreage.

Woolf & Magee holds a permit from the Railroad Commission to drill a well on land located outside of the subdivision, not on lots 67 and 110. However, the Railroad Commission has required that an emergency evacuation route be established because the well is expected to produce hydrogen sulfide gas. To comply with the Railroad Commission's order, Woolf & Magee created an emergency evacuation route by constructing a limestone road with culverts across lots 67 and 110. However, subdivision restrictions prohibiting the lots from being used for a street, access road, or public thoroughfare, and restricting the use of the lots to single family residential purposes were imposed on the lots in the subdivision in 1968, subsequent to the severance of the mineral and surface estates on the lots.

Property Owners objected to the use of the lots as an emergency evacuation route. They requested the trial court to declare that construction of the emergency road on the lots was unrelated to the mineral interest owner's right of access, that it was not a permissible use of the surface, and that it was an excessive use violating the subdivision restrictions.

The judgment included the following declarations regarding Woolf & Magee's proposed use of the lots as an emergency road:

(1) it was a use related to the right of the lessee of a severed mineral interest to use the surface estate for access

and for reasonably necessary usages in the removal of oil, gas, and other minerals;

(2) such use did not constitute an excessive or unauthorized exercise by the mineral owner's lessee of the mineral owner's rights to use the surface for removal of the reserved minerals; and

(3) the restrictive covenants imposed on the lots did not affect or limit the rights of the owners or lessees of the severed mineral estate to reasonably use the surface inasmuch as such covenants were imposed subsequent to the reservation and severance of the mineral estate.

The trial court's challenged findings of fact and conclusions of law stated that the emergency evacuation road did not constitute a "street, access road, or thoroughfare" within the meaning of the restrictive covenants, that the emergency road across the lots was a reasonable and necessary use of the surface, and that the restrictive covenants did not affect the rights of the owner or lessee of the severed mineral estate to use the surface.

Property Owners contend that although Woolf & Magee is the surface owner of the two lots, its use of the surface, i.e., construction of the emergency road on the lots, was in violation of the subdivision restrictions, unduly burdening all the other lots in the subdivision. Property Owners argue that although the mineral owner or lessee has the right to reasonably burden the surface estate for the benefit of its own estate, the mineral owner or lessee cannot burden the surface estate of other lots in the subdivision, some of which are not pooled within the unit.

Woolf & Magee counters that the trial court's judgment should be affirmed because creation of the road on the lots does not violate the restrictions, the restrictions do not apply to the owner of the severed mineral interest, and the mineral owner's (and lessee's) right to reasonably use the surface estate includes the right to pool and the right to reasonably use the pooled or unitized surface area.

In their first point of error, Property Owners contend the trial court erred in concluding that the restrictive covenants limiting the use of the surface did not affect or limit the rights of the owners or lessees of the severed mineral estate to reasonably use the surface because the covenants were imposed *subsequent to* the reservation and severance of the mineral estate. The findings of fact and conclusions of law complained of, in pertinent part, are as follows:

. . . .

3. The restrictive covenants imposed on Lots 67 and 110 of the Del Mar Subdivision do not affect or limit the rights of the owners and lessees of the severed mineral estate to reasonably use the surface of lots in such subdivision for the exploration, development, mining and removing of such reserved minerals as an incident to the ownership of such minerals under such lots inasmuch as such covenants were imposed subsequent to the reservation and severance of the mineral estate.

8. When a mineral interest severed from the surface estate of a tract of land is pooled or unitized with other lands to form a pooled unit for production of minerals, the surface rights available and appurtenant to such severed mineral interests are available for use in the exploration, development and production of such reserved minerals by means of such unit to the same extent as if such unit were a single tract of land, and such reserved minerals were spread throughout.

9. Those activities reasonably necessary to the exploration, development and production of minerals from a pooled unit may be carried on at any reasonable site upon the unit, provided the mineral interests pooled and unitized with respect to the tract of land upon which such site is located would permit such activities thereon if all such activities were upon such tract as an unpooled single tract.

10. Defendant, Woolf & Magee, Inc., under its oil, gas and mineral lease and the rights existing between the parties,

is entitled, in drilling, completing and producing its McCord No. 1 Well in accordance with the permit held by it from the Railroad Commission of Texas, to use Lots 67 and 110 of the Del Mar Subdivision as an emergency evacuation route in compliance with the provision therefor of its contingency plan filed by said Defendant pursuant to Rule 36 of the Railroad Commission of Texas.

In the unchallenged findings of fact, the trial court found that the subdivision was composed entirely of lands from an 80–acre tract of land and a 20–acre tract. Lots 67 and 110 are located on the 80–acre tract. The mineral estate of the 80–acre tract was severed from the surface in 1962. The mineral estate of the 20–acre tract was severed in 1918. The subdivision restrictions were not imposed until 1968. These unchallenged findings of fact establishing that the mineral estate was severed prior to the imposition of the subdivision restrictions are binding on appeal. *DeBenavides v. Warren*, 674 S.W.2d 353, 356 (Tex.App. —San Antonio 1984, writ ref'd n.r.e.).

■ When the mineral and surface estates are severed, the mineral estate is the dominant estate. *Acker v. Guinn*, 464 S.W.2d 348, 352 (Tex.1971). The owner of the severed mineral estate and its lessee have the right to use the surface to the extent that is reasonably necessary to develop and produce the minerals. *Robinson v. Robbins Petroleum Corp.*, 501 S.W.2d 865, 867 (Tex.1973); *Getty Oil Co. v. Jones*, 470 S.W.2d 618, 621 (Tex.1971). This implied surface easement of reasonable usage extends to the surface of the pooled or unitized area. *Delhi Gas Pipeline Corp. v. Dixon*, 737 S.W.2d 96 (Tex.App.—Eastland 1987, writ denied); *Miller v. Crown Central Petroleum Corp.*, 309 S.W.2d 876 (Tex.Civ.App.—Eastland 1958, writ dism'd by agr.).

■ The mineral owner, having the dominant estate, cannot be limited by subdivision restrictions imposed by surface owners after the estate is severed. The trial court correctly concluded that since the restrictive covenants were imposed subsequent to the severance of the minerals in and under the subdivision, they do not determine the scope of the implied surface easements that are incidental to the ownership of the minerals. Property Owners' first point of error is overruled.

■ In the second and third points of error, Property Owners challenge on sufficiency grounds the trial court's conclusion that Woolf & Magee's proposed use of the surface is a reasonably necessary use and does not constitute excessive or unauthorized use. Property Owners contend that Woolf & Magee's use of the surface is excessive and could not be a reasonable use because it violates the restrictions to which Woolf & Magee's surface title to lots 67 and 110 is subject. Property Owners assert that residential subdivisions should be protected from uses of their lots inconsistent with valid restrictive covenants by persons who take the lots subject to such covenants, whether a mineral owner or otherwise.

Woolf & Magee, as the surface owner of lots 67 and 110, may be subject to the restrictions, since the restrictions were in force at the time the surface estate was conveyed to it. But Woolf & Magee's use of the surface is not based on its rights as the surface owner. Rather, it derives from the right of the mineral owner to use the surface. Therefore, Woolf & Magee is not limited by the restrictive covenants imposed subsequent to the severance of the mineral estate. The showing of a burden on the adjoining landowners, and the adjoining landowners' preferences regarding the use of the surface are not controlling and fail to establish that Woolf & Magee's use of the surface is not reasonably necessary to production and removal of the oil, gas and other minerals.

■ The unchallenged findings of fact relating to this point establish that Woolf & Magee applied to the Railroad Commission for a certificate of compliance with Rule 36. This rule relates to safety precautions and contingency plans to use when hydrogen sulfide gas might be encountered during the drilling of a well.

One of the provisions of the plan required an emergency evacuation road over lots 67 and 110. The Railroad Commission issued an order approving the contingency plan, conditioning its approval on formation of the emergency evacuation road as set forth in the plan. Approval of the plan by the Railroad Commission is a prerequisite to the drilling of the well pursuant to the permit.

There was evidence at trial that the emergency evacuation route was initially proposed to satisfy the residents' concern that there was only one exit in the subdivision to use in the event an emergency situation arose during the drilling of the well. The evidence established that the emergency road would be locked, guarded, and only used in the event of an emergency. After reviewing all the evidence, we conclude there was sufficient evidence to support the challenged conclusions. Property Owners' second and third points of error are overruled.

It is unnecessary to address Property Owners' remaining points of error since these points are dependent upon the erroneous assumption that the subdivision restrictions are a limitation upon the mineral estate.

The judgment of the trial court is affirmed.