THE MABLE CLEARY TRUST v
THE EDWARD-MARLAH MUZYL TRUST

Docket No. 244744. Submitted May 27, 2004, at Lansing. Decided June
17, 2004, at 9:00 A.M. Leave to appeal sought.

The Mable Cleary Trust (the owner of three lots in the Sturgeon
River Estates Subdivision) brought an action in the Otsego Circuit
Court against the Edward-Marlah Muzyl Trust, William L. Muzyl,
and Dale J. Smith Broker, Inc. (the subdivision developers),
Thomas and Susan Tomkow (the owners of land within the
subdivision on which a natural gas well was to be drilled), and
Paxton Resources, LLC (the driller), seeking to block the develop-
ment of mineral interests, including a gas well, within the resi-
dential subdivision, primarily on the basis that the mineral devel-
opment would violate the subdivision's restrictive covenants.
Plaintiff's theories included fraudulent misrepresentation,
fraudulent misrepresentation or fraud by a broker, trespass,
trespassory nuisance, breach of contract, breach of warranty of
title, civil conspiracy, and negligent misrepresentation. The court,
Alton T. Davis, J., granted summary disposition on all counts for
the defendants and dissolved an injunction, all without prejudice.
Plaintiff filed a substantially similar amended complaint, and the
court again granted summary disposition on all counts for the
defendants and dismissed the amended complaint. The plaintiff
appealed.

The Court of Appeals *held*:

1. Negative covenants restrict the use of land within the
subdivision for commercial enterprises. Before the development
began and before the covenants were adopted, the previous owners
severed an undivided half interest in the mineral rights within the
subdivision. After the covenants were in place, the developers
retained the remaining mineral rights from each parcel as it was
sold. The previous owners' retained mineral rights, and those of
their successors, cannot be limited by subdivision restrictions
imposed by surface owners after the mineral rights had been
severed from the surface rights. Because the previous owners
desire to develop their undivided half interest in the mineral
interests through Paxton and because the developers similarly

want to develop their half interest, MCL 319.101, the majority in interest statute, affirmatively grants authorization to develop those interests as a matter of law. The covenants specifically allowed for gas drilling, the placement of a well head, and for storage for natural gas. Because the previous owners' interest predates the covenants, Paxton, the lessee of both owners' mineral interests, may use and occupy the whole surface estate delineated in its lease, but limited to uses incidental to the exploration and development of the minerals.

2. The trial court improperly dismissed two counts relating to fraud and misrepresentation and one count of civil conspiracy with regard to the developers only. Plaintiff's trustee asked defendant Smith, a developer, as well as a real estate broker, about the covenants, and Smith discussed the covenants with the trustee. Smith, in an affidavit, admits speaking with the trustee, that he was the marketing agent for the developers, and describes how he claimed that he had no specific knowledge regarding any future mineral development plans and that his discussion conformed to the covenants. While his discussion may have been truthful, he failed to inform the trustee about the previous land owners' reserved mineral rights that are not subject to the covenants. Plaintiff has stated a cause of action for silent fraud and a genuine issue of material facts exists concerning the circumstances surrounding the trustee's inquiry into the restrictive covenants and about the damages that the plaintiff alleges. Similarly, the plaintiff has stated a viable claim for civil conspiracy against the developers.

3. The decisions of the circuit court in dismissing the remaining five claims are affirmed on the basis of failure to meet the elements of the claim, lack of standing, or irrelevance of a party to the claim.

Affirmed in part, reversed in part, and remanded.

PROPERTY — RESIDENTIAL PROPERTY — RESTRICTIVE COVENANTS — PREDEVELOPMENT MINERAL RIGHTS.

Where a previous owner has retained mineral rights before the restrictive covenants in a residential property subdivision development are filed, that previous owner's rights cannot be limited by subdivision restrictions imposed by surface owners after the mineral rights had been severed from the surface rights.

*Susan Hlywa Topp, PLC* (by *Susan Hlywa Topp*), for the Marble Cleary Trust.

*Matthew D. Vermetten* and *Troy W. Stewart* for the Edward-Marlah Muzyl Trust, William J. Muzyl, and Dale J. Smith Broker, Inc.

*Mika, Meyers, Beckett & Jones, PLC* (by *John M. DeVries* and *Jennifer A. Puplava*), for Paxton Resources, LLC, and Thomas Tomkow.

Before: CAVANAGH, P.J., and MURPHY and SMOLENSKI, JJ.

SMOLENSKI, J. At issue in this case is the right to develop certain mineral interests; specifically, the right to gas exploration and development in a residential subdivision. Plaintiff, the Mable Cleary Trust, owns three lots in the subdivision and brought suit against defendants Dale Smith, William Muzyl, the Edward-Marlah Muzyl Trust, Thomas and Susan Tomkow, and Paxton Resources alleging that the mineral development violated the subdivision's restrictive covenants. The trial court granted defendants' motions for summary disposition and plaintiff appeals as of right. We affirm in part, reverse in part, and remand.

### I. BACKGROUND

On October 14, 1996, defendants Dale Smith, William Muzyl, and the Edward-Marlah Muzyl Trust (collectively referred to as the "Developers"), purchased the property now known as the Sturgeon River Estates from the Otsego Ski Club-Hidden Valley, Inc (Otsego). As part of this purchase agreement, Otsego retained an undivided fifty percent interest in the mineral rights.

Developers developed the property into a residential housing area, the Sturgeon River Estates Subdivision. As part of the development, Developers adopted and

recorded certain restrictive covenants, which were initially recorded on September 25, 1997. On November 25, 1997, Developers terminated the previously recorded restrictive covenants and recorded a replacement set, which, as far as this case is concerned, are materially identical. Plaintiff purchased by warranty deed its first parcel within the subdivision in the fall of 1997. On July 22, 1998, plaintiff purchased from Developers two additional parcels in the subdivision.

In early 1999, Otsego and defendant Paxton Resources (Paxton) entered into a mineral lease. On August 27, 2001, an amendment to this previously recorded mineral lease was recorded, which assigned Otsego's undivided fifty percent mineral interest to Paxton. After the last parcel in the subdivision was sold, Developers leased their undivided fifty percent mineral interest to Paxton on June 21, 2001. After obtaining the mineral leases, Paxton approached plaintiff regarding the placement of an Antrim field gas well on one of plaintiff's parcels. Discussions ensued. Despite their disagreement regarding why the negotiations with plaintiff ended, the parties agree that Paxton then approached defendant Thomas Tomkow, a different property owner in the subdivision, seeking to locate the well on his property. Tomkow agreed, and Paxton obtained a permit from the MDEQ[1] to drill the Tomkow C-14 Antrim gas well on Tomkow's property. Tomkow's property lies between and adjacent to two parcels owned by plaintiff.

Litigation began in this case in November 2001 when plaintiff, other subdivision property owners, and the property owners' association filed a complaint against Developers contending that the proposed gas well on Tomkow's property violated the subdivision's restric-

---

[1] Michigan Department of Environmental Quality.

tive covenants. As a result of a settlement agreement, most of the plaintiffs withdrew from the litigation.[2] Plaintiff, alone, then filed its first amended complaint against Developers in December 2001 alleging fraudulent misrepresentation, breach of contract, trespass, and negligent misrepresentation. Plaintiff also sought injunctive and declaratory relief. On January 16, 2002, the trial court entered an order for a preliminary injunction until a full hearing on the matter could be held.

In February 2002, Developers filed a motion for summary disposition pursuant to MCR 2.116(C)(8) and (10). Developers argued that because Otsego had severed its mineral rights before the restrictive covenants were in place, Otsego's interest was not burdened by the covenants. Therefore, Otsego was free to develop its interest in a reasonable manner through Paxton. Defendants also argued that the restrictive covenants contemplated mineral development and plaintiff had notice of this possibility. The trial court agreed and stated that plaintiff's claims were mainly anticipatory because exploration had not yet begun. Nevertheless, the court found that the proposed well head placement specifically, and the exploration and development in general, did not violate the covenants. The court also held that Michigan's majority in interest statute, MCL 319.101, did not bar Otsego from developing its interest, contrary to plaintiff's contention. But it dismissed plaintiff's claims without prejudice, because it did not want to preclude plaintiff from refiling a complaint once development had begun, stating that plaintiff may have

---

[2] Plaintiff states in its second amended complaint that Paxton induced the other surface owners to violate the restrictive covenants by virtue of signing this agreement. But plaintiff alleges no claim against Paxton or the other surface owners stemming from the settlement agreement, and plaintiff did not join the other surface owners as defendants.

a cause of action for damages at that time. As a result of its ruling, the trial court dissolved the preliminary injunction. Plaintiff's subsequent motion for reconsideration was denied.[3]

Paxton began work on the well in April 2002 when the trial court lifted the injunction. The well is located 186 feet west of the east border of the subdivision. Placement on the border was prohibited by the existence of a thirty-five-foot wide public utility easement that is located there. On July 3, 2002, plaintiff filed its second amended complaint, which contained the same counts as in its first amended complaint, and added defendants the Tomkows and Paxton and new counts of nuisance, breach of warranty of title, misrepresentation or fraud by real estate broker, and conspiracy.

Defendants filed motions for summary disposition, which the trial court granted. With regard to the claims against Paxton and the Tomkows, the court again held that Otsego was free to develop its interest irrespective of the restrictive covenants and that the majority in interest statute did not prevent its unilateral development. Thus, no claim against these defendants could stand and the court granted their motion for summary disposition. Regarding the Developers, the court noted that the claims and arguments plaintiff presented were the same as those in plaintiff's first amended complaint.

---

[3] The trial court held that plaintiff's motion for reconsideration simply restated plaintiff's position and corresponding arguments. It presented no new facts or evidence, save for a recent Supreme Court decision, *Terrien v Zwit*, 467 Mich 56; 648 NW2d 602 (2002). Plaintiff asserted that the development did violate the covenants because commercial activity was prohibited by the covenants. *Terrien* held that a commercial activity was an activity carried on for profit. *Id.* at 63-65. The trial court held that *Terrien* was not applicable because it did not involve oil and gas exploration, but rather the operation of a family day care home in a subdivision.

Therefore, the court relied on its earlier ruling and granted Developers' motion for summary disposition.

## II. STANDARDS OF REVIEW

The trial court granted defendants' motions for summary disposition pursuant to MCR 2.116(C)(8) and (10). Such a ruling is reviewed de novo by this Court. A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim, while a motion under MCR 2.116(C)(10) tests the factual support for a claim. Granting a motion pursuant to MCR 2.116(C)(8) is proper when the opposing party has failed to state a claim on which relief can be granted, the claim is clearly unenforceable as a matter of law, and no factual development could support recovery. When reviewing such a motion, only the pleadings are considered; no documentary evidence may be examined. In contrast, when considering a motion under MCR 2.116(C)(10), we must consider the pleadings and all the documentary evidence, including affidavits and depositions, in the light most favorable to the nonmoving party in order to determine if the moving party is entitled to a judgment as a matter of law. *Rorke v Savoy Energy, LP*, 260 Mich App 251, 253; 677 NW2d 45 (2003), MCR 2.116(G)(5).

## III. APPLICATION OF THE RESTRICTIVE COVENANTS

Plaintiff argues that because Developers' mineral interest was severed after the restrictive covenants were filed, their interest is subject to the restrictive covenants. Negative covenants restricting land use are grounded in contract. *Stuart v Chawney*, 454 Mich 200, 210; 560 NW2d 336 (1997). A covenant is a contract created with the intention of enhancing the value of property and is a valuable property right. *Terrien v Zwit*, 467 Mich 56, 71-72; 648 NW2d 602 (2002).

The two restrictive covenants at issue read as follows:

C. *LAND USE*

\* \* \*

4a. The seller hereby reserves unto itself its successors and assigns, an easement over each site for public utilities and private road. An easement sufficient in size, for a well head private gas line, and or oil well shall be reserved by the Developer on the East border of the Sites including access, ingress and egress sufficient in size to meet developers needs. No compressor facilities are permitted in Sturgeon River Estates. A well head, if located, shall be screened from view with vegetation. Within these easements, no structure, planting or other material shall be placed or permitted which may damage or interfere with the installation and maintenance of utilities, or which may change the direction or flow of water through drainage channels in the easements. The easements area of each site and all improvements in it shall be maintained continuously by the owner of each site except for those improvements for which a public authority, utility company or developer is responsible.

E. *GENERAL PROVISIONS*

\* \* \*

5. These covenants, conditions and restrictions are to run with the land and shall be binding upon all parties and all persons claiming under them, provided, however, that the covenants, conditions and restrictions may be amended, changed or eliminated entirely, excepting gas and/or oil line and well head easements which shall run in perpetuity, by agreement signed by the owners of ten of the sites in this development, stating in what manner the covenants, conditions and restrictions are to be amended, changed or eliminated and said agreement shall be recorded in the Office of the Register of Deeds for Otsego County, Michigan.

The preamble to the covenants states several of the restrictions' purposes, such as to "[p]reserve, as far as practicable, the natural resources and natural beauty" of the properties in the Sturgeon River Estates, "to provide adequately for a quality of life upon said property and to enhance the values of investments made by purchasers in Sturgeon River Estates."

Ordinarily, the owner of the land is also the owner of the minerals beneath it. However, a land owner's mineral rights may be severed from the remainder of the land by a proper conveyance such as a reservation or an exception. *Stevens Mineral Co v Michigan*, 164 Mich App 692, 696; 418 NW2d 130 (1987). A mineral interest is "severed" when that interest is owned by a person different from the person who owns the surface estate. *Energetics, Ltd v Whitmill*, 442 Mich 38, 40 n 1; 497 NW2d 497 (1993). When more than one person holds title to the mineral rights, their relationship is one of tenants in common. See *Fenton v Miller*, 94 Mich 204, 214; 53 NW 957 (1892) (a tenancy in common exists where two or more persons hold possession of lands and tenements at the same time by several and distinct titles).

## A. DEVELOPERS' INTEREST

Developers severed their mineral rights from each lot sold at the time the property was conveyed to the surface owner. The first set of restrictive covenants were terminated on October 31, 1997, but were not recorded until November 25, 1997, when the replacement covenants were filed. The covenants were identical in all aspects material to this case. Also on October 31, 1997, plaintiff purchased the first of its lots, but the deed was not recorded until November 12, 1997. There was no evidence that other lots were previously con-

veyed. Given these facts, it is clear that Developers'
undivided fifty percent mineral interest is burdened by
the restrictive covenants as they were in place before
Developers severed their interest from the surface
estates.[4]

### B. OTSEGO'S INTEREST

When Otsego sold the property known as the Stur-
geon River Estates to Developers, it retained an undi-
vided fifty percent interest in the mineral rights. All
parties agree that because Otsego's interest was sev-
ered from the land's surface rights over one year before
the restrictive covenants were recorded, Otsego's inter-
est is not burdened by the covenants. But Michigan has
no case on point regarding this rule. Turning to other
jurisdictions, we find that the Texas Court of Appeals
has directly addressed this issue.[5] In *Property Owners of
Leisure Land, Inc v Woolf & Magee, Inc*, 786 SW2d 757
(Tex App, 1990), lessee North Central Oil Corporation
pooled its lease with others to form the McCord Oil Unit
#1 managed by Woolf & Magee, Inc. Subsequently,
subdivision restrictions were imposed that prohibited

---

[4] Plaintiff's argument that the second set of recorded covenants is null
and void is irrelevant for purposes of this appeal. In all material aspects
the applicable provisions in each set of covenants are substantially the
same and at times are identical. Also, plaintiff fails to allege what effect
nullifying the second set of covenants would have on this case. Moreover,
plaintiff admitted in its brief in response to defendants' September 6,
2002, motion for summary disposition that "the distinction between the
first set and second set of Restrictive Covenants and the time frame in
which they were recorded seems to be of no importance."

[5] We recognize that law from other jurisdictions is not binding, but it
may constitute persuasive authority. *People v Jamieson*, 436 Mich 61,
86-87; 461 NW2d 884 (1990). Other states, because of the abundance of
certain natural resources within their borders, have extensively devel-
oped their law in the area of mineral, gas, and oil rights and leases.
Therefore, we review the decisions of these courts for guidance.

the lots from being used for a street, access road, or public thoroughfare, and also restricted the use of the lots to single family residential purposes. *Id.* at 758. The court held that the mineral owner, which by assignment was the lessee defendant, "cannot be limited by subdivision restrictions imposed by surface owners after the estate is severed." *Id.* at 760.

This reasoning is consistent with the holding of *Rorke, supra,* a Michigan case that involved a slightly different issue. In that case, this Court held that the defendant's mineral interest in ninety-five acres was not effected by a subsequent subdivision of the surface parcels.[6] *Id.* at 256. The *Rorke* Court agreed that the defendant's rights were fixed by the instrument that granted them, and that, therefore, the defendant had the right to reasonably use any portion of the surface land subject to its lease in order to develop its rights. *Id.* at 256-257. We find the logic of these two cases compelling. Accordingly, we hold that once a person's mineral rights have vested through the proper conveyance, no subsequent conveyance of or restriction placed on the surface estate will affect the mineral owner's rights.[7]

Plaintiff argues that despite Otsego's interest not being burdened by the restrictive covenants, Otsego cannot unilaterally develop its mineral interest because it does not hold a "majority in interest" as contemplated by MCL 319.101. Defendants argue that this statute is inapplicable because the Legislature intended the statute to be used in circumstances where the majority in

---

[6] In reaching its decision, this Court relied on the reasoning delineated in *Rice v Stapleton*, 502 SW2d 522 (Ky App, 1973), and *Schlueter v Shawnee Operating Co*, 141 Misc 2d 1000; 535 NYS2d 867 (1988). *Rorke, supra* at 256-257.

[7] However, this rule must yield to any applicable statutory requirements, such as the recording requirements mandated by the dormant mineral rights act, MCL 554.291 *et seq.*

interest holder(s) wants to develop its mineral rights and the minority holder(s) do not.

Questions of statutory interpretation are questions of law that we review de novo. *Macomb Co Prosecuting Attorney v Murphy*, 464 Mich 149, 157; 627 NW2d 247 (2001). In interpreting a statute, we are guided by the following principles:

> In considering a question of statutory construction, this Court begins by examining the language of the statute. We read the statutory language in context to determine whether ambiguity exists. If the language is unambiguous, judicial construction is precluded. We enforce an unambiguous statute as written. Where ambiguity exists, however, this Court seeks to effectuate the Legislature's intent through a reasonable construction, considering the purpose of the statute and the object sought to be accomplished. [*Id.* at 158 (citations omitted).]

A statute is ambiguous if reasonable minds can differ regarding its meaning, and, thus, judicial construction is appropriate. *Adrian School Dist v Michigan Pub School Employees Retirement Sys*, 458 Mich 326, 332; 582 NW2d 767 (1998).

MCL 319.101 provides:

> Whenever lands, or oil and gas, or oil and gas mineral rights in lands in this state are owned by tenants in common, joint owners, cotenants or coparceners, whether such title is derived by purchase, devise or descent, or otherwise, or whether any or all of the owners are minors or of full age, such tenants in common, joint owners, cotenants or coparceners as hold a majority in interest in the title to such lands or the oil and gas rights in such lands, shall be authorized to explore, drill, mine, develop and operate such lands for oil and gas mining purposes and remove and transport oil and gas and other petroleum products from such lands, or store the same on said lands, and sell and dispose of the same in the manner hereinafter provided.

We disagree with defendants that this statute is not applicable. Otsego desires to develop its undivided fifty percent mineral interest through Paxton. The statute clearly provides that a sole owner must own a majority of the mineral interests in order to be authorized, as a matter of law, to explore and develop the land. Words not defined in a statute should be accorded their plain and ordinary meaning. *Theisen v Knake*, 236 Mich App 249, 253; 599 NW2d 777 (1999). A "majority" is "[t]he number greater than half of any total." Black's Law Dictionary (6th ed).[8] Fifty percent is not a majority.

But the statute does not prohibit a nonmajority in interest holder from developing its interest, contrary to plaintiff's assertion. It merely affirmatively grants such authorization by operation of law to a majority holder. After careful review, we find that this statute does not prohibit Otsego from developing its interest through Paxton. The filing of a suit pursuant to MCL 319.103 seeking court-ordered authorization is not mandatory. MCL 319.103 provides in part, "The owners of such majority in interest desiring to lease said lands . . . *may* file a bill . . . ." Had plaintiff desired to use the majority in interest statute to prevent development of Otsego's interest, plaintiff was free to institute an action pursuant to MCL 319.104, yet it did not do so. In any event, such an action would have been futile because MCL 319.108 provides that authorization must be granted if holders of a majority in interest in the title consent to development. Together Developers and Otsego own a majority in interest, one hundred percent. The restrictions on Developers' interest are irrelevant for purposes of this statute. The only requirement is that a majority

---

[8] Where a term is not defined by the statute, dictionaries may be consulted to determine a word's meaning. *Koontz v Ameritech Services, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002).

in interest consents to the development according to the terms proposed.[9] The evidence clearly indicates that both parties desire development of Otsego's interest. Thus, under MCL 319.108, the court would be required to enter an order authorizing Otsego to develop its mineral rights in the Sturgeon River Estates.

Plaintiff erroneously argues that Otsego's interest is irrelevant and that the trial court erred in considering the interest of a nonparty. Otsego's interest is very relevant to this case. Because Otsego's interest is not burdened by the restrictive covenants and MCL 319.101 is not a bar to development, Otsego may freely develop its interest irrespective of Developers' burdened interest. Thus, Paxton, as Otsego's lessee, is not subject to the restrictive covenants at issue in this case and may develop the mineral interest on Otsego's behalf.[10] Accordingly, as will be explained below, no claim may stand against Paxton or the Tomkows that is based on an alleged violation of the covenants. Because Otsego and Developers are tenants in common, Paxton is

[9] This is consistent with the general principle that an action by a cotenant, which would otherwise be impermissible at law, becomes permissible if the other cotenant consents to or ratifies the action. See *Pellow v Arctic Iron Co*, 164 Mich 87, 92; 128 NW 918 (1910). Plaintiff cites the *Pellow* case to demonstrate that without the majority in interest statute, less than one hundred percent of the owners would not be entitled to develop the mineral rights. Therefore, even with the majority in interest statute, plaintiff concludes that Otsego is not entitled to begin development because it only owned a fifty percent interest. However, plaintiff's reliance is misplaced. *Pellow* held that a cotenant could convey an undivided interest in the whole property, but could not convey by metes and bounds an undivided interest in a specific parcel of the common estate. And plaintiff glosses over the fact that this rule only applies absent "consent or subsequent ratification by [the] cotenant." *Id.*

[10] "[A]n oil and gas lease is a transfer of an interest in oil and gas." *Energetics, supra* at 47. The assignee receives all of the rights of the assignor pertaining to the subject of the lease. *Burkhardt v Bailey*, 260 Mich App 636; 680 NW2d 453 (2004).

entitled to use and occupy the whole surface estate delineated in its lease, though this right is limited to uses incidental to the exploration and development of the minerals. *VanAlstine v Swanson*, 164 Mich App 396, 405; 417 NW2d 516 (1987). Moreover, despite the lease executed between Developers and Paxton, there has been no evidence presented to indicate that Paxton has been developing the property for Developers, as opposed to Otsego by virtue of its lease with Otsego.[11]

### IV. PLAINTIFF'S SECOND AMENDED COMPLAINT CLAIMS

#### A. CLAIMS AGAINST DEVELOPERS ONLY

In count I (fraudulent misrepresentation), plaintiff alleges that Developers intentionally represented the Sturgeon River Estates as pristine and natural property, while concealing their plans to develop the subsurface. Plaintiff's allegations in count III (misrepresentation or fraud by real estate broker) are substantially similar, except this count only applies to defendant Smith, the real estate broker who sold plaintiff its property.

Fraudulent misrepresentation requires that plaintiff prove:

> (1) The defendant made a material representation. (2) The representation was false. (3) When the defendant made the representation, it knew that it was false, or the defendant made it recklessly, without knowledge of its truth, and as a positive assertion. (4) The defendant made the representation with the intention that it should be acted on by the plaintiff. (5) The plaintiff acted in reliance

---

[11] We are cognizant of the fact that Paxton may have obtained a permit to drill on another property owner's land. However, we were not provided with a copy of this permit and no evidence was presented to suggest that this development would be pursuant to Paxton's lease with Developers.

on the representation. (6) The plaintiff suffered injury due to his reliance on the representation. [*Hord v Environmental Research Institute of Michigan (After Remand)*, 463 Mich 399, 404; 617 NW2d 543 (2000).]

Developers contend that plaintiff's claims of fraud cannot stand because there are no *false* representations in the restrictive covenants. We agree that there is no evidence about the representations' falsity, and, regarding the Developers, there is no evidence to suggest that they do not intend to abide by the covenants.

It appears, however, that plaintiff is actually alleging a claim of silent fraud. In its complaint, plaintiff alleges that Developers concealed facts regarding the type and location of future mineral development in the subdivision, which caused the covenants to be misleading. Plaintiff essentially claims that Developers either should have disclosed Otsego's interest or not marketed the property as pristine and protected by the restrictive covenants. Suppression of facts and truths can constitute silent fraud where the circumstances are such that there exists a legal or equitable duty to disclose. *Hord, supra* at 412. A legal duty to disclose commonly arises from a circumstance in which the plaintiff inquires regarding something, to which the defendant makes a false or misleading representation by replying incompletely with answers that are truthful but omit material information. *Id.*

Here, plaintiff's successor trustee, Cleland Leask, provided an affidavit in which he states that he inquired about and discussed the restrictive covenants with defendant Smith. And plaintiff alleges that Smith knew of Developers' plans to place gas wells throughout the subdivision. Smith admits in his affidavit that he spoke to Leask regarding the covenants, but states that he did not have any specific knowledge regarding any future

mineral development plans and his representations conformed to the provisions of the restrictive covenants. However, Smith also admits that as the marketing agent for Developers all information represented by them was delivered through him. And Smith is one of the developers whose name appears on the parcels' deeds as a grantor. While Smith's answers may have been truthful, he failed to inform Leask of Otsego's reserved mineral rights that are not subject to the covenants. From the evidence presented, we believe that plaintiff has stated a cause of action for silent fraud and a genuine issue of material fact exists concerning the circumstances surrounding Leask's inquiry into the restrictive covenants about the damages that plaintiff alleges. Therefore, we find that the trial court improperly dismissed counts I and III.[12]

Developers argue that there can be no fraud because plaintiff had constructive notice of Otsego's interest. Otsego's interest was validly recorded and plaintiff, had it looked, would have discovered this information. It is true that "there can be no fraud where the means of knowledge regarding the truthfulness of the representation are available to the plaintiff and the degree of their utilization has not been prohibited by the defendant." *Webb v First of Michigan Corp*, 195 Mich App 470, 474; 491 NW2d 851 (1992). But in the cases where this rule has been applied, the plaintiffs were either presented with the information and chose to ignore it or had some other indication that further inquiry was needed. See *Phinney v Perlmutter*, 222 Mich App 513; 564 NW2d 532 (1997); *Nieves v Bell Industries, Inc*, 204 Mich App 459; 517 NW2d 235 (1994); *Webb, supra*. In this case, some warranty deeds provided that Develop-

---

[12] Because defendant Smith was admittedly Developers' agent, Developers can also be held liable.

ers retained "all oil, gas and mineral rights, if any." And Developers represented that any mineral development would be in accordance with the restrictive covenants. Thus, plaintiff had no basis on which to question the existence of more than one owner of the mineral rights. See generally *Sautter v Ney*, 365 Mich 360; 112 NW2d 509 (1961); *People v Reigle*, 223 Mich App 34; 566 NW2d 21 (1997). Accordingly, we find that this rule does not serve as a bar to plaintiff's fraud claims.

Next, we address plaintiff's negligent misrepresentation claim,[13] which requires plaintiff to prove "that a party justifiably relied to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Law Offices of Lawrence J Stockler, PC v Rose*, 174 Mich App 14, 30; 436 NW2d 70 (1989). Plaintiff does not contend that developers were negligent in preparing the restrictive covenants or that the substance of the restrictive covenants was false. Plaintiff's argument that the covenants were misleading rests on the fact that it believed all mineral development would be pursuant to the covenants because it did not know of Otsego's interest. However, this Court has declined to extend the tort of negligent misrepresentation beyond the misrepresentation of facts that can be independently verified. *City Nat'l Bank v Rodgers*, 155 Mich App 318, 323-324; 399 NW2d 505 (1986). And plaintiff has not alleged that any factual representations in the covenants were false in themselves. Therefore, plaintiff has failed to state an actionable claim and the trial court did not err by dismissing this count.

---

[13] Although plaintiff levies this claim against all defendants and specifically references Paxton within its allegations in this count, it avers no allegations of misrepresentation by Paxton or the Tomkows. Therefore, we consider this count in relation to Developers only.

Plaintiff also asserts a claim of breach of warranty of title against Developers. Specifically, plaintiff alleges that the representations made by the restrictive covenants were a warranty and that the warranty was false. Plaintiff acknowledges that Developers warranted title through the conveyance of a warranty deed. Such deed includes the covenant to warrant and defend title. *McCausey v Oliver*, 253 Mich App 703, 707; 660 NW2d 337 (2002).

> The covenant of warranty is an agreement by the grantor that upon the failure of the title which the deed purports to convey, he will make compensation in money for the loss sustained. It is an assurance or guarantee of title, or an agreement or assurance by the grantor of an estate that the grantee and his heirs and assigns shall enjoy it without interruption by virtue of a paramount title, and that they shall not, by force of a paramount title, be evicted from the land or deprived of its possession. [*Id.*, quoting 20 Am Jur 2d, Covenants, § 48, pp 505-506.]

Here, plaintiff's rightful title to its property is not threatened, and plaintiff is not in danger of being deprived of possession of its lands. Accordingly, plaintiff has failed to state a claim of breach of warranty of title.

### B. CLAIMS AGAINST DEVELOPERS AND PAXTON

Plaintiff also alleges breach of contract (count II) and conspiracy (count IV) against Developers and Paxton. Plaintiff contends that these parties breached the contract created by the restrictive covenants when Paxton began development of the Tomkow gas well because the easement did not provide for gas well development. Because Paxton is not bound by the restrictive covenants, it cannot be held liable for a breach.[14] Further-

---

[14] Because the restrictive covenants were imposed after Otsego severed its mineral interest, they do not determine the scope of the implied

more, because Otsego, through Paxton, is free to develop its interest irrespective of the restrictive covenants, we find that the trial court did not err in refusing to issue an injunction regarding the Tomkow gas well. For the same reason, the preliminary injunction was properly dissolved. Thus, plaintiff is not entitled to the injunctive relief sought in count VIII.

Additionally, this claim cannot stand against Developers because plaintiff proffers no evidence that Paxton is operating the Tomkow gas well on behalf of Developers, as opposed to Otsego. Even if plaintiff were able to present such evidence, the development of gas well heads in general is not prohibited by the restrictive covenants. Plaintiff points to paragraph 1 of § C of the covenants as support for the contrary, asserting that this paragraph prohibits any commercial activity within the subdivision. We disagree.

This provision reads:

> All sites shall be used for single family residential purposes only. All structures are to be styled in keeping with the plans for the development. Care must be exercised to maintain the natural beauty of the site. No commercial enterprise shall be conducted thereon. Said premises may be leased or rented in whole or in part from time to time for residential purposes only. At such time as the residence structure is completed the owner shall provide off street parking for at least two vehicles.

Paragraph 4a of this section pertains to the easement reserved by Developers for purposes of mineral development.

---

surface easements that are incidental to the ownership of the minerals. *Leisure Land, supra* at 760. As Otsego's lessee, Paxton may make reasonable use of the surface estate in order to develop the mineral rights. *VanAlstine, supra.* Whether Paxton's use is considered reasonable is not an issue before us. See *Rorke, supra* at 257 n 2 (questions of reasonableness are to be initially decided by the supervisor of wells).

Restrictive covenants are to be read as a whole to give effect to the ascertainable intent of the drafter. "The restrictions must be construed in light of the general plan under which the restrictive district was platted and developed." *Borowski v Welch*, 117 Mich App 712, 716; 324 NW2d 144 (1982). The general title of § C is "Land Use." When its paragraphs are read in conjunction with each other, it is clear that the covenants sought to prohibit the residential owners themselves from operating commercial enterprises on their property. Thus, as in *Terrien, supra* at 64-65, where a similar provision prevented a resident owner from operating a family day care center out of his home, paragraph 1 of § C would prohibit gas exploration if a *resident* undertook such an operation. But in this case Developers, through its lessee Paxton, would be the entity charged with operating the commercial enterprise. Therefore, this provision of the restrictive covenants would not prevent Developers from developing their mineral interest.

Plaintiff also argues that gas well heads are not a permissible means of mineral development under the restrictive covenants. In construing restrictive covenants, giving effect to the intent of the drafter, its words should be given their ordinary meaning, avoiding an over technical analysis. *Borowski, supra* at 716-717. Additionally, "[c]ovenants are to be construed with reference to the present and prospective use of property as well as to the specific language employed and upon the reading as a whole rather than from isolated words." *Id.* at 717.

Plaintiff points to the phrase used in paragraph 4a of § C of the covenants as support for its contention that gas well heads are not permitted. This phrase states that Developers reserved an easement "for a well head gas line, and or oil well . . . ." Plaintiff's literal interpretation of this poorly punctuated phrase is at odds with

other covenant provisions. Paragraph 5 of § E provides that the covenants may be modified or eliminated, except for "gas and/or oil line and well head easements." Plaintiff's interpretation could have created a factual dispute about the meaning of this phrase if any evidence had been presented that a "well head private gas line" is an actual thing. In the absence of such evidence, plaintiff's nonsensical interpretation must yield to the obvious explanation that the phrase was simply missing proper punctuation. Therefore, we find that the covenants clearly provide for mineral development in the form of gas wells.

The issue whether the Tomkow well in particular is permissible under the restrictive covenants is a more problematic question by virtue of its location. If Paxton were operating the Tomkow well on behalf of Developers, then the covenants would restrict this development to an easement "on the east border" of the subdivision sites. It is undisputed that this well is located 186 feet west of the eastern border. A thirty-five-foot wide public utility runs along the eastern border. As the trial court acknowledged, "on the east border" is an ambiguous term as this could mean literally on the east border or merely designate the general location. Had plaintiff presented any evidence that Paxton's development was on behalf of Developers, then the proper interpretation of this phrase would be a question for the trier of fact. But because plaintiff failed to introduce any such evidence and, in fact, makes no allegations of such a connection, no genuine issue of material fact exists for trial. Accordingly, the trial court properly dismissed plaintiff's breach of contract claim.

Plaintiff contends, though, that the court's ruling was premature because discovery was not complete. Even where discovery has not yet been closed, a ruling

on a motion for summary disposition is appropriate "if there is no reasonable chance that further discovery will result in factual support for the nonmoving party." *Colista v Thomas*, 241 Mich App 529, 537-538; 616 NW2d 249 (2000). Plaintiff first pleaded its breach of contract claim in its original complaint filed November 28, 2001. And the court issued its ruling regarding plaintiff's second amended complaint on October 16, 2002. Plaintiff had nearly one year to produce evidence linking Paxton's development to Developers' interest and failed to do so. Although discovery had been extended to March 3, 2003, we simply do not believe that a further opportunity to take the depositions of defendants Smith and Muzyl will lead to a fair chance of uncovering the necessary factual support regarding plaintiff's breach of contract claim. Moreover, "[i]f a party opposes a motion for summary disposition on the ground that discovery is incomplete, the party must at least assert that a dispute does indeed exist and support that allegation by some independent evidence." *Bellows v Delaware McDonald's Corp*, 206 Mich App 555, 561; 522 NW2d 707 (1994). Here, plaintiff does not even allege that Paxton is operating on behalf of Developers. Accordingly, we hold that the court's summary disposition rulings on plaintiff's second amended complaint were not premature.

Next, we address plaintiff's civil conspiracy claim. A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means. A claim of civil conspiracy must be based on an underlying actionable tort. *Advocacy Org for Patients & Providers v Auto Club Ins Ass'n*, 257 Mich App 365, 384; 670 NW2d 569 (2003). Here, plaintiff's conspiracy claim is based on misrepresentation and fraud regarding the manner in which the

lots were sold. Because there is no basis for the underlying tort with regard to Paxton, the trial court did not err in granting summary disposition to that party. *Id.* at 384-385. With regard to Developers, plaintiff has stated a viable claim. Because there are genuine issues of material fact regarding plaintiff's fraud claims, counts I and III only, we find that plaintiff's civil conspiracy claim also survives summary disposition as relating to Developers only.

C. CLAIMS AGAINST ALL DEFENDANTS

Plaintiff alleges claims of trespass (count VI) and nuisance (count VII) against all defendants. "Trespass is an invasion of the plaintiff's interest in the exclusive possession of his land, while nuisance is an interference with his use and enjoyment of it." *Adams v Cleveland-Cliffs Iron Co*, 237 Mich App 51, 59; 602 NW2d 215 (1999) (citation deleted). In order to recover for trespass, a plaintiff must have title to or actual possession of the land on which the trespass is claimed. *Saph v Auditor General*, 317 Mich 191, 202; 26 NW2d 882 (1947); *Difronzo v Port Sanilac*, 166 Mich App 148, 155; 419 NW2d 756 (1988). Because plaintiff does not allege that the gas well, access road, or pipeline is located on its property, plaintiff lacks standing to bring this claim.

Liability for trespassory nuisance may be imposed when "(1) the defendant has created the nuisance, (2) the defendant owned or controlled the property from which the nuisance arose, or (3) the defendant employed another to do work that he knew was likely to create a nuisance." *Traver Lakes Community Maintenance Ass'n v Douglas Co*, 224 Mich App 335, 345; 568 NW2d 847 (1997). To recover under nuisance, a plaintiff must prove significant harm caused by the defendant's unreasonable interference with the use or enjoy-

ment of the property. *Adams, supra* at 67. Here, plaintiff failed to allege any significant harm. Moreover, the only reason that plaintiff asserts defendants' development is an unreasonable interference is because of plaintiff's contention that the development violates the restrictive covenants. Because we have held that Paxton may develop the minerals free of the restrictive covenants, plaintiff fails to state a claim on which relief can be granted. Accordingly, the trial court properly dismissed plaintiff's claims for trespass and nuisance with respect to all defendants pursuant to MCR 2.116(C)(8).[15]

### V. RES JUDICATA/COLLATERAL ESTOPPEL

Defendants argue that the counts in the second amended complaint are barred by the doctrines of res judicata and collateral estoppel because these counts were pleaded or could have been raised in plaintiff's first amended complaint. Defendants present this argument as an alternative basis for affirming the trial court's ruling. Because we find that the trial court properly dismissed counts II, V, VI, VII, VIII, and IX pursuant to MCR 2.116(C)(8) and (10), we need not address this issue as it pertains to these counts.

In regard to counts I, III, and IV, we find that plaintiff was not barred from raising these claims in its second amended complaint. Both res judicata and collateral estoppel require that the subsequent issue sought to be barred was previously litigated and decided by a court. *Eaton Co Bd of Rd Comm'rs v Schultz*, 205 Mich App 371, 375-377; 521 NW2d 847 (1994). Generally, a dis-

---

[15] Because we hold that counts V to IX were properly dismissed as a matter of law, there is no merit to plaintiff's argument that summary disposition was premature because discovery had not yet been closed. *Mackey v Dep't of Corrections*, 205 Mich App 330, 333-334; 517 NW2d 303 (1994).

missal without prejudice is not an adjudication on the merits, and thus res judicata is also inapplicable. *Yeo v State Farm Fire & Cas Ins Co*, 242 Mich App 483, 484; 618 NW2d 916 (2000). But a summary disposition ruling is the procedural equivalent of a trial on the merits that bars relitigation on principles of res judicata. *Capital Mortgage Corp v Coopers & Lybrand*, 142 Mich App 531, 536; 369 NW2d 922 (1985). However, when the trial court ruled on plaintiff's fraud and misrepresentation claim in the first amended complaint, the court stated:

> The question that the Court had as bordered on an inquiry regarding the misrepresentation claim—what affect [sic] did this language have and was it misleading—I don't think there's any evidence before me at the moment that would support that. But I don't prohibit the Plaintiff, either, should the Plaintiff wish to amend.

On the basis of the court's comments, it is clear that the court did not intend for its ruling to be a final adjudication on the merits such that plaintiff would be prohibited from raising again a misrepresentation claim. Moreover, application of these doctrines requires that there are two separate suits. *Eaton Co Rd Comm'rs, supra* at 376. Here, plaintiff's first amended complaint was dismissed without prejudice and plaintiff was allowed to file an amended complaint. Plaintiff was not required to file a new action. Thus, plaintiff's second amended complaint does not constitute a subsequent lawsuit for purposes of res judicata and, therefore, its claims are not barred. See *VandenBerg v VandenBerg*, 253 Mich App 658, 663; 660 NW2d 341 (2002).

## VI. CONCLUSION

We hold that the trial court did not err in granting summary disposition in favor of defendants on counts V

to IX pursuant to MCR 2.116(C)(8). We also hold that count II was properly dismissed under MCR 2.116(C)(10). With regards to counts I, III, and IV, we find that a genuine issue of material fact does exist, such that summary disposition was improper as to these counts as it pertains to Developers only.

Affirmed in part, reversed in part, and remanded.